602 A.2d 470

**PETITION OF KENVUE DEVELOPMENT, INC., a Pennsylvania corporation, and Kenvue Service Company, a Pennsylvania corporation for the appointment of viewers to ascertain the just compensation due petitioners arising from the de facto condemnation of their properties in the Township of Kennedy.**

**Appeal of TOWNSHIP OF KENNEDY, Appellant.**

Commonwealth Court of Pennsylvania.

Argued Oct. 10, 1991.

Decided Jan. 16, 1992.

108

Mary Jo Miller, for appellant Tp. of Kennedy.

William P. Bresnahan, for appellee.

Before CRAIG, President Judge, and DOYLE and BYER, JJ.

CRAIG, President Judge.

Kennedy Township appeals a decision of the Court of Common Pleas of Allegheny County which dismissed the township's preliminary objections, determined that the township's connection of its sewer system to the system of Kenvue Development and Kenvue Service Company constituted a *de facto* taking of Kenvue's property, and referred the matter to a board of viewers to determine Kenvue's damages. We affirm the decision of Judge Raymond L. Schieb.

The trial court did not set forth the facts of this case in its opinion, but the pleadings reveal the following history. In 1971, the Pennsylvania Department of Environmental Resources (DER) issued a sewage permit to the township to operate a sewer plant to serve Kenvue Development's residential development. Kenvue Development constructed the sewer system and Kenvue Service Company operated the plant.[1] The DER permit provided that if a more suitable location became available, Kenvue's plant would be abandoned and its sewage treated at the alternate site.

In 1972, the Pennsylvania Public Utility Commission (PUC) granted Kenvue a certificate of public convenience to provide sewage treatment service to the development. In Kenvue's application, it acknowledged that the township

---

1. Kenvue Development and Kenvue Service Corporation will be collectively referred to as Kenvue in this opinion.

was the permittee for its sewer plant and, as part of its order, the PUC ordered Kenvue to obtain a sewage permit from the DER before offering service to the public. Kenvue has never obtained a DER permit.

In 1973, the DER issued a sewage permit to the Kennedy Township Municipal Sewage Authority to construct a municipal sewer system in the township. The authority's engineers designed the municipal system to use Kenvue's existing system, including its land, manholes, pipelines, rights of way and appurtenances.

In March, 1976, the authority entered Kenvue's property and connected its sewer system to Kenvue's system without Kenvue's consent. Kenvue protested the township's actions and the authority disconnected its system from Kenvue's plant.

In 1977, the township asked the DER to cancel its permit for the Kenvue treatment plant because its municipal sewer system was complete and the homes which were being served by the Kenvue plant could be connected to it. On August 17, 1978, the DER ordered Kenvue, the township and the authority immediately to initiate negotiations to provide for interconnection of the two systems, and ordered that interconnection of the Kenvue sewers with the township's municipal system take place no later than September 22, 1978, and that the township cause the abandonment of the Kenvue plant after interconnection of the systems. Pursuant to the DER order, the township's permit for the Kenvue plant was cancelled effective September 29, 1978.

In its letter accompanying the order, the DER stated that "nothing in the Order shall be construed to establish or modify the right of any party with regard to any compensation for the value of the plant abandoned pursuant to the Order."

On September 26 or 29, 1978, the township entered Kenvue's property and completed physical connection of its municipal sewer system to Kenvue's system. The township

later dismantled Kenvue's plant and removed all reusable materials.

On November 6, 1978, Kenvue filed a petition for appointment of viewers to ascertain the just compensation due as a result of the township's actions. On December 20, 1978, the township filed preliminary objections.

On October 29, 1990, the Court of Common Pleas of Allegheny County dismissed the township's preliminary objections, concluded that the township's actions constituted a *de facto* taking of Kenvue's property and ordered that the case be referred to a board of viewers for a determination of Kenvue's damages. This appeal followed.

The township argues that (1) Kenvue's operation of its sewage treatment system after the DER cancelled the permit for its operation constituted a nuisance per se which the township had a statutory duty to abate; (2) the township's action constituted an exercise of the police power rather than a *de facto* taking of Kenvue's property; (3) Kenvue's system was dedicated to the township by the development's homeowners; (4) if Kenvue is entitled to any damages, the DER is liable for the damages because the township was only complying with the DER's order to interconnect the systems; and (5) the trial court erred in refusing to disqualify Kenvue's counsel.

Our scope of review is limited to determining whether the trial court committed an error of law or abused its discretion. *Capece v. City of Philadelphia,* 123 Pa. Commonwealth Ct. 86, 552 A.2d 1147 (1989).

1. DID KENVUE'S OPERATION OF ITS TREATMENT SYSTEM CONSTITUTE A NUISANCE PER SE WHICH THE TOWNSHIP HAD A STATUTORY DUTY TO ABATE?

█ The township first argues that Kenvue's operation of its sewage treatment plant constituted a nuisance per se under the Clean Streams Law (Law) and that the Law required the township to abate the nuisance.

Section 691.202 of the Clean Streams Law, 35 P.S. § 691.-202, provides that a "discharge of sewage without a permit . . . is hereby declared to be a nuisance." Thus, because the DER's order cancelled Kenvue's permit effective September 29, 1978, under section 691.202, the claim is that Kenvue's system would have become a nuisance per se on that date.

However, the DER did not issue its order, requiring the township to interconnect its municipal system with Kenvue's plant no later than September 22, 1978, on the basis that Kenvue's plant was a nuisance. As noted above, the DER did not cancel the permit until September 29, 1978, a week after the township was to have completed the interconnection. Thus, the township's action in connecting the sewer systems one week earlier could not have been in response to a nuisance situation, because a nuisance per se could not have existed until September 29, 1978.

■ The township also argues that Kenvue's petition in this case is an attack upon determinations in several other appeals related to the township's taking of Kenvue's property, specifically those appeals relating to the original permit's provision requiring the township to interconnect Kenvue's plant to a more suitable system if it became available and the DER's order cancelling the township's permit for the Kenvue plant. However, in this case, Kenvue is arguing only that it is entitled to compensation for the value of its property, an issue Kenvue could not have raised in those actions.

### 2. DID THE TOWNSHIP'S ACTIONS CONSTITUTE AN EXERCISE OF ITS POLICE POWER?

■ The township also argues that it properly exercised its police power when it took Kenvue's plant because a health hazard would continue if the township did not complete its municipal sewer system and because the township could not complete its municipal system as designed until the township connected the municipal system with Kenvue's system.

■ Generally, when the state or local government takes private property for a public use, the Eminent Domain Code [2] provides for compensation to the property owner. However, a municipality that acquires private property for the public good under the authority of its police powers is not required to compensate the property owner for diminution in use even though the action amounts to an actual taking or destruction of the property. *Miller v. Commonwealth, Department of Environmental Resources*, 133 Pa. Commonwealth Ct. 327, 578 A.2d 550 (1990); and *Reilly v. Department of Environmental Resources*, 37 Pa. Commonwealth Ct. 608, 391 A.2d 56 (1978).

The township cites several cases in support of its argument that, in order to prevent continuation of a health hazard which existed on adjacent properties, the township was required to interconnect its municipality-wide system with Kenvue's plant and, thus, that it properly exercised its police power and is not required to compensate Kenvue for its system.

However, in each of the cases the township cites, a hazard or danger existed on the property which the state or local government took. In this case, Kenvue's plant posed no health hazard in the community and did not constitute a nuisance at the time the township was to interconnect its system with Kenvue's plant.

Accordingly, as discussed below, the township is required under the First Class Township Code (Code) [3] to compensate Kenvue for the system, which was taken as part of its plan to develop a municipality-wide sewer system.

### 3. WAS KENVUE'S SYSTEM DEDICATED TO THE TOWNSHIP BY THE DEVELOPMENT'S HOMEOWNERS?

■ The township argues that it obtained an agreement with more than half of the residents of Kenvue's system

2. Act of June 22, 1964, Special Sess., P.L. 84, *as amended,* 26 P.S. §§ 1–101–1–903.

3. Act of June 24, 1931, P.L. 1206, *as amended,* 53 P.S. §§ 55101–58502.

and that under section 2415(e) of the Code, 53 P.S. § 57415(e), the residents dedicated Kenvue's sewer system to the public.

Section 2415, 53 P.S. § 57415, provides the manner by which townships with no municipality-wide sewer system acquire community systems. Subsections (a) and (b) provide that

> (a) Any township in which any person, firm, or corporation, or other township or municipal corporation, is maintaining sewers and culverts with the necessary inlet and appliances for surface and under surface and sewage drainage, or in which any person or persons are maintaining a community sewage collection or disposal system as herein defined, may become the owner of such community sewage collection or disposal system, *by paying therefor not more than the actual value of the same at the time of the taking by the township,* or by gift from the owner or owners thereof.
>
> (b) In case the commissioners of the township cannot agree with the owners of such sewers or sewage collection or disposal system as to the price to be paid therefor, the commissioners may enter upon and take possession . . . of such sewage collection or disposal system. *For all damage done or suffered, or which accrues to the owner or owners of the sewer or sewage collection or disposal system by reason of the taking of the same, the funds of the township, raised by taxation, shall be pledges and deemed as security, such damages to be determined by viewers in the manner provided by this act for eminent domain proceedings.* (Emphasis added.)

Subsections (c) and (d), 53 P.S. §§ 57415(c) and (d), relate to the definition of a community sewage collection or disposal system and enlargement of the system after it is acquired, respectively.

Because the township and Kenvue did not agree on a price to be paid for the Kenvue plant and the township entered Kenvue's property and took possession of the plant, the township is responsible for all damages to Kenvue for

the township's taking of Kenvue's system in accordance with section 57415(b), 53 P.S. § 57415(b). Therefore, the trial court correctly ordered that a board of viewers be appointed to determine Kenvue's damages.

■ However, the township argues that subsection (e) of section 57415, 53 P.S. § 57415(e) provides a manner by which it could acquire a community sewer system without paying compensation to its owners. Subsection (e) provides that

> [w]henever a community sewage collection or disposal system is or shall have been established within a township by a private owner or owners, and the township commissioners are thereafter empowered, by ordinance, to acquire the ownership of the sewage disposal system so established ... such acquisition and ownership shall be subject to the following provisions of this subsection:
>
> > (1) When the person or persons having established or constructed a community sewage collection or disposal system, or when more than one-half the number of the owners of properties which are connected with have a right to use and are using a community collection or disposal system, enter into an agreement with the township for the acquisition of the system by the township, such agreement shall be considered a valid agreement by the owners of the sewage collection or disposal system and a transfer of ownership to the township....

In this case, the township (1) enacted an ordinance empowering it to acquire Kenvue's plant and (2) entered into an agreement with more than half of Kenvue's homeowners. Thus, based on the township's compliance with the terms of subsection (e) the township argues that it is not required to compensate Kenvue because subsection (e) does not expressly require townships to compensate sewer plant owners for systems townships acquire under that provision.

However, section 57415(e)(5), which requires a township to deposit in a special fund all moneys received from sewer

charges collected after a municipality has acquired a sewer system under subsection (e), provides that

> if at any time after the acquisition ... of the sewer system, a regular sewer system is made available by the township for connection with the properties using the community sewage collection or disposal system, *the owners of such properties shall be subject to the other provisions of this act relating to sewers....* (Emphasis added.)

This court cannot assume that the legislature intended any language in a statute to be mere surplusage. *Commonwealth v. Mlinarich*, 518 Pa. 247, 542 A.2d 1335 (1988). See also section 1922(2) of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922(2). The language of subsection (e) provides that after a township acquires a community sewer system, the owner of the properties connected to community sewer system are subject to the other provisions of this act. Under subsections (a) and (b), the township must compensate Kenvue for its property.

In short, we must read section 2415 in its entirety, including subsections (a) and (b) ... not just subsection (e) in isolation.

The township also argues that Kenvue did not suffer any compensable injury. However, under section 57415(b), that determination is not for this court, but for the board of viewers.

### 4. IS THE DER RESPONSIBLE FOR KENVUE'S DAMAGES?

 The township also argues that it was only following the DER's order requiring it to interconnect with Kenvue's plant and, therefore, that the DER is liable for Kenvue's damages. We disagree.

The DER ordered that the township and Kenvue immediately initiate negotiations to provide for the interconnection and, in its letter accompanying the order, stated that the order did not modify the parties' right to compensation.

Also, as noted above, section 57415(a) and (b), 53 P.S. §§ 57415(a) and (b), require the township to compensate a private sewer system's owner when the township acquires that system.

### 5. SHOULD KENVUE'S COUNSEL HAVE BEEN DISQUALIFIED?

■ The township finally argues that an attorney with the law firm representing Kenvue, Richard Ehmann, and the law firm should be disqualified because Mr. Ehmann was employed by the DER when the DER cancelled the township's permit for the Kenvue plant.

■ A party seeking to disqualify opposing counsel has the burden of establishing that counsel's continued participation in the case would violate the disciplinary rules. *Freeman v. Kulicke and Soffa Industries, Inc.*, 449 F.Supp. 974 (E.D.Pa.1978), *affirmed*, 591 F.2d 1334 (3d Cir.1979). The township argues that Disciplinary Rules DR 9–101(B) of the Code of Professional Responsibility, adopted by our Supreme Court, is applicable in this matter. That rule provides that

[a] lawyer shall not accept private employment in a matter in which he had substantial responsibility while he was a public employee.

Although Mr. Ehmann was actively involved in the action relating to the DER's cancellation of the township's permit for Kenvue's sewer system, the only question before this court is whether the township is required under the First Class Township Code to compensate Kenvue for the taking of its property. There is no similarity between the issues and arguments in the DER's case and this case. Therefore, Mr. Ehmann did not have "substantial responsibility" in *this* matter while he was employed by the DER.

Under the applicable statutory provisions of section 57415 of the First Class Township Code, 53 P.S. § 57415, the township is liable for the damages Kenvue incurred as a result of the township's actions in acquiring the Kenvue

sewer system. The trial court's decision to refer the matter to a board of viewers to determine the amount of these damages is affirmed.

This decision was reached before the conclusion of Judge Byer's service.

## ORDER

Now, January 16, 1992, the decision of the Court of Common Pleas of Allegheny County, No. GD78–26458, dated October 29, 1990, is affirmed.