## First Republic Bank v. Brand

*Peter J. Boyer,* for plaintiff.
*Jamie Perrapato,* for defendants.

HERRON, *J.,* April 30, 2001—Defendants Steven D. Brand, James M. Dougherty, Arthur L. Powell, Richard S. Powell, Jon R. Powell, Carol P. Heller, Nancy E. Powell, Harold G. Schaeffer, James R. Schaeffer, Anthony L. Schaeffer and Robert D. Schaeffer have filed a motion to disqualify Spector Gadon & Rosen P.C., which is currently counsel for plaintiff First Republic Bank. For the reasons set forth in this opinion, the court is issuing a contemporaneous order denying the motion.

## BACKGROUND

The underlying dispute in this matter arises from a transaction in which the defendants, who owned all of the shares of Fidelity Bond and Mortgage Co., sold an 80 percent interest in Fidelity to First Republic and Phoenix Mortgage Company.[1] It is undisputed that the Spector firm served as counsel to First Republic in the transaction. First Republic has alleged that, in connection with the transaction, the defendants made numerous representations that they knew to be false.

On the basis of its allegations, First Republic has pled two counts for breach of contract, in addition to claims for fraudulent misrepresentation, negligent misrepresentation and punitive damages. This court struck the claims for negligent misrepresentation and punitive damages in response to the defendants' preliminary objections in *First Republic Bank v. Brand,* August term 2000, no. 147 (C.P. Phila. Dec. 19, 2000) (Herron, J.),[2] but allowed First Republic to proceed on its remaining claims.

---

1. The transaction was structured such that First Republic and Phoenix formed FBMC Acquisition Corp., with First Republic contributing cash in exchange for 51 percent of the common stock of FBMC and Phoenix purchasing the remaining 49 percent. FBMC, in turn, purchased all of the Fidelity common stock from the defendants and issued the defendants 20 percent of the FBMC stock. The end result was that FBMC owned all of the Fidelity shares, and that First Republic, Phoenix and the defendants owned 41 percent, 39 percent and 20 percent, respectively, of the outstanding FBMC stock. These events are referred to collectively as the "transaction."

2. Available at http://courts.phila.gov/cpcvtcomp.htm. This opinion describes the transaction and First Republic's allegations in greater detail.

The defendants now assert that, in addition to representing First Republic in the transaction, the Spector firm also represented Fidelity and the defendants, supplementing the advice the defendants were receiving from their own counsel. According to the motion, the Spector firm was the main proponent of the transaction and had "full and unfettered access" to Fidelity's financial records. Motion at ¶6.[3] In addition, it is asserted that the Spector firm performed legal services for the defendants and that First Republic's claims are based on confidential information provided by the defendants to the Spector firm. Based on these allegations, the defendants assert that they had an attorney-client relationship with the Spector firm and that members of the Spector firm will be necessary witnesses in this matter. Both of these facts, they contend, require that the Spector firm be disqualified as First Republic's counsel in this matter.

## DISCUSSION

The defendants' motion must be denied for several reasons. First, the allegations in the motion, even if true, do not establish a legal relationship between the defendants and the Spector firm, which is necessary for disqualification of an attorney for a conflict of interest. In addition, because the Pennsylvania Rules of Professional Conduct bar representation by an attorney-witness at trial only, the motion is, at best, premature.

---

3. This appears to have come in the course of the Spector firm's due diligence review of Fidelity's records, which it did on First Republic's behalf. Affidavit of Edward G. Fitzgerald at ¶16.

A Pennsylvania trial court has the authority to disqualify an attorney whose behavior threatens to violate the prohibition in the Rules of Professional Conduct against conflicting representations. *Maritrans GP Inc. v. Pepper, Hamilton & Scheetz,* 529 Pa. 241, 254-55, 602 A.2d 1277, 1283-84 (1992). See generally, *McCarthy v. SEPTA,* no. 733 EDA 2000, 2001 WL 347147 at *3 (Pa. Super. Apr. 10, 2001) (Pennsylvania trial courts may sanction counsel for violating the Rules of Professional Conduct). This authority, however, is limited to those circumstances "where disqualification is needed to [e]nsure the parties receive the fair trial which due process requires." *In re Estate of Pedrick,* 505 Pa. 530, 542, 482 A.2d 215, 221 (1984). In addition, "[a] party seeking to disqualify opposing counsel has the burden of establishing that counsel's continued participation in the case would violate the disciplinary rules." *Petition of Kenvue Development Inc.,* 145 Pa. Commw. 106, 117, 602 A.2d 470, 476 (1992) (citing *Freeman v. Kulicke & Soffa Industries Inc.,* 449 F. Supp. 974 (E.D. Pa. 1978), *aff'd,* 591 F.2d 1334 (3d Cir. 1979)).

Here, the defendants assert that their prior relationship with the Spector firm creates a conflict with the Spector firm's current representation of First Republic in violation of Pennsylvania Rule of Professional Conduct 1.9. In addition, the defendants claim that members of the Spector firm will be necessary witnesses at trial, precluding their participation as counsel under Pa.R.P.C. 3.7. These violations, they contend, disqualify the Spector firm from representing First Republic.

## I. *Because No Attorney-Client Relationship Ever Existed Between the Defendants and the Spector Firm, the Spector Firm May Not Be Disqualified Under Rule 1.9*

The Pennsylvania Rules of Professional Conduct address an attorney's conflict of interest with a former client:

"A lawyer who has formerly represented a client in a matter shall not thereafter:

"(a) represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after a full disclosure of the circumstances and consultation; or

"(b) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known." Rule 1.9.

In *Estate of Pew,* 440 Pa. Super. 195, 655 A.2d 521 (1994), the Pennsylvania Superior Court elaborated on Rule 1.9 and set forth a three-prong test for when it might apply.

"An attorney is prohibited from undertaking a representation adverse to a former client in a matter 'substantially related' to that in which the attorney previously had served the client. . . . The fact that the two representations involved similar or related facts is not, in itself, sufficient to warrant the finding of a substantial relationship so as to disqualify the attorney from the representation, but, rather the test is whether information acquired by an attorney in his former representation is substantially related to the subject matter of

subsequent representation. . . . If the attorney might have acquired confidential information related to the subsequent representation, Pa.R.P.C. 1.9 would prevent the attorney from representing the second client. . . . Confidential information gained by one member of a law firm is imputable to other members of the same law firm. . . . Therefore, a former client seeking to disqualify a law firm representing an adverse party on the basis of its past relationship with a member of the law firm has the burden of proving: *(1) that a past attorney-client relationship existed which was adverse to a subsequent representation by the law firm of the other client; (2) that the subject matter of the relationship was substantially related; (3) that a member of the law firm, as attorney for the adverse party, acquired knowledge of confidential information from or concerning the former client, actually or by operation of law."* 440 Pa. Super. at 243-44, 655 A.2d at 545-46. (citations omitted) (emphasis added)[4]

The defendants address the first prong of the *Pew* test concerning their alleged pre-existing attorney-client relationship with the Spector firm. According to the defendants, the Spector firm represented them in the transaction[5] and was involved in drafting the transaction

---

4. The *Pew* court observed that "[t]he test of whether an attorney has conflicting interests so as to preclude his representation of a party is not actuality of conflict, but possibility that a conflict may arise." 440 Pa. Super. at 243, 655 A.2d at 545 (citing *Middleberg v. Middleberg*, 427 Pa. 114, 233 A.2d 889 (1967)).

5. The defendants allege that the Spector firm also represented First Republic, Fidelity and FBMC. They also assert that the Spector firm engaged in the "common representation of all interests" in the transaction, but it is unclear if the defendants intend to assert that the Spector firm represented Phoenix as well. Defendants' memorandum at 13.

documents, securing financing from Summit Bank and counseling all of the parties with regards to the legal effects of the transaction. Defendants' memorandum at 12; affidavit of Steven D. Brand at ¶¶2-5. Seven Spector firm attorneys, including many of the senior members of the Spector firm, were allegedly involved in these activities. Defendants' memorandum at 8, 21-22.

First Republic counters that the Spector firm never had an attorney-client relationship with the defendants, either by contract or by implication, although it acknowledges that the Spector firm represented Fidelity in a limited manner in the transaction.[6] Without establishing a prior relationship with the Spector firm, First Republic asserts, the defendants cannot show a violation of Rule 1.9 and are not entitled to have the Spector firm disqualified.

The defendants anticipate and specifically confront First Republic's argument by pointing to evidence of the Spector firm's relationship with the defendants. First, the defendants contend that the transaction involved the sale of the Fidelity shares and therefore had a significant impact on the holders of the Fidelity shares, *i.e.,* the defendants. In addition, the defendants assert that the alleged misrepresentations upon which First Republic's claims are based "likely were confidentially

---

6. The Spector firm states that it represented Fidelity only in securing loans from Summit Bank, PNC Bank and CoreStates Bank and that its representation of Fidelity in the transaction was "strictly limited to the completion of specific corporate matters that were necessary for the transaction to be consummated." Fitzgerald affidavit at ¶17. This representation was undertaken with the consent of all parties to the transaction. *Id.* The Spector firm also acknowledges that it did work for Fidelity after the transaction's consummation. *Id.* at ¶¶20-22.

communicated directly to the Spector firm by the [defendants] during the firm's common representation of all interests in the merger transaction." Defendants' memorandum at 13. Moreover, the defendants allege that the Spector firm's advice to Fidelity may have created an obligation on the defendants to act in a particular manner, although neither the advice given nor the obligation created is described. *Id.* As further evidence in support of their argument, the defendants have submitted a series of documents, including a letter from the Spector firm to Fidelity's president that references an invoice for work done "on behalf of Fidelity Bond & Mortgage Co. and it's [sic] investors" in connection with the transaction. Brand affidavit exhibit 7.

A threshold issue raised by these arguments is whether the defendants have shown that an attorney-client relationship arose with the Spector firm by implication.[7] Pennsylvania courts have adopted the following test to determine if an attorney-client relationship has arisen by implication:

"Absent an express contract an implied attorney-client relationship will be found if (1) the purported client sought advice or assistance from the attorney; (2) the advice sought was within the attorney's professional competence; (3) the attorney expressly or impliedly agreed to render such assistance; and (4) it is reasonable for the putative client to believe the attorney was representing him." *Atkinson v. Haug,* 424 Pa. Super. 406, 411-12, 622 A.2d 983, 986 (1993) (citing *Sheinkopf v. Stone,* 927 F.2d 1259, 1264 (1st Cir. 1991)).

---

7. The defendants have not attached a contract evidencing any relationship between the Spector firm and the defendants, forcing the court to focus solely on whether an implied relationship existed.

In addition, Pa.R.P.C. 1.13(a) states that "[a] lawyer employed or retained by an organization represents the organization acting through its duly authorized constituents." This makes it clear that an attorney representing a corporation represents the corporation and not the corporation's shareholders, officers or directors. No Pennsylvania state cases, however, specifically address an implied attorney-client relationship as between a corporation's attorney and the corporation's shareholders.[8]

In informal opinion 95-390, issued in 1995, the American Bar Association Committee on Ethics and Professional Responsibility cautioned practitioners on the potential for confusing a corporate client with those involved in corporate operations:

"Because a lawyer who represents a corporation necessarily must deal with individuals—be they directors, officers and other employees, or shareholders—it is tempting to view some of them, or all of them collectively, as clients. Absent special circumstances, however, the rule of law applied by the courts, and the rule of professional responsibility that guides disciplinary authorities, is that the lawyer must view the corporation itself as the client, and in his or her representation must work for the best interest of the corporation." Op. 95-390 at 10 n.6.

Although some courts have held that the attorney of a closely held corporation represents the corporation's

---

8. This distinction is important because, in a corporate setting, the question is not *whether* an attorney-client relationship has been formed but rather *with whom* the relationship has been formed. In addition, as noted *infra*, determining who is a client is especially difficult when distinguishing between a corporation and its shareholder.

shareholders as well,[9] most courts in other jurisdictions have analyzed the attorney-client relationship in closely held corporations based on the facts of the particular case. See *e.g., Sackley v. Southeast Energy Group Ltd.,* no. 83 C 4615, 1987 WL 12950 at *3 (N.D. Ill. June 22, 1987) ("[w]here a small, closely-held corporation is involved . . . the line between individual representation and representation of the corporation may be blurred, and whether the attorney for the corporation is also acting as the attorney for individual officers, directors, or shareholders must be determined from the facts of the case"); *Bobbitt v. Victorian House Inc.,* 545 F. Supp. 1124, 1126 (N.D. Ill. 1982) (client identity analysis in the context of a small close corporation with only a few shareholders and directors is "complex" and "must be determined on the individual facts of each case"). Cf. op. 95-390 at 11 (1995) ("whether a lawyer represents a corporate affiliate of his client, for pur-

---

9. The most extreme example of this approach is set forth in *In re Brownstein,* 602 P.2d 655 (Or. 1979):

"Where a small, closely held corporation is involved, and in the absence of a clear understanding with the corporate owners that the attorney represents solely the corporation and not their individual interests, it is improper for the attorney thereafter to represent a third party whose interests are adverse to those of the stockholders and which arise out of a transaction which the attorney handled for the corporation. In actuality, the attorney in such a situation represents the corporate owners in their individual capacities as well as the corporation unless other arrangements are clearly made." 602 P.2d at 657.

This broad statement, however, has been limited in focus in subsequent opinions. See *In re Conduct of Kinsey,* 660 P.2d 660, 670 (Or. 1983) (distinguishing and narrowing *Brownstein*). Cf. *Agster v. Barmada,* 43 D.&C.4th 353, 375 (C.P. Allegheny 1999) (Wettick, J.) (stating that there is "no legal justification" for an "absolute rule that in closely held corporations corporate counsel represents all shareholders").

poses of Rule 1.7, depends not upon any clear-cut per se rule but rather upon the particular circumstances").[10]

The particular difficulties in client identity in the context of a closely held corporation were explored by

---

10. As might be expected, there is a great deal of variation in the conclusions courts have reached. Compare *Wayland v. Shore Lobster & Shrimp Corp.,* 537 F. Supp. 1220, 1223 (S.D.N.Y. 1982) (where corporation did not counsel any shareholder individually, and firm billed corporation, shareholder's belief that firm was his counsel was not reasonable); *In re United Utensils Corp.,* 141 B.R. 306, 308 (Bankr. W.D. Pa. 1992) ("[a]n attorney for a corporation does not by virtue of that fact necessarily create an attorney-client relationship with its officers, directors, shareholders, or other third parties affiliated with the corporation"); *Skarbrevik v. Cohen, England & Whitfield,* 282 Cal. Rptr. 627, 634 (Cal. Ct. App. 1991) (corporate counsel is not the attorney of the corporation's stockholders merely because his or her actions benefit the stockholders); *Brennan v. Ruffner,* 640 So.2d 143, 146 (Fla. Dist. Ct. App. 1994) ("an attorney representing a corporation does not become the attorney for the individual stockholders merely because the attorney's actions on behalf of the corporation may also benefit the stockholders"); *McCabe v. Arcidy,* 635 A.2d 446, 450 (N.H. 1994) ("[a]bsent evidence that a corporation's attorney furnished legal advice to a shareholder, . . . the attorney is not the representative of the corporation's shareholders simply because the attorney's actions on its behalf also benefit the shareholders"); and *Lee v. Mitchell,* 953 P.2d 414, 425-26 (Or. Ct. App. 1998) ("a corporation is a legal entity separate from its shareholders, directors and officers . . . . Thus, the mere existence of an attorney-client relationship between a corporation and an attorney does not in itself create an attorney-client relationship—or any other basis for fiduciary duties—between the attorney and a corporate stockholder"); with *Rosman v. Shapiro,* 653 F. Supp. 1441, 1445 (S.D.N.Y. 1987) (counsel for a closely held corporation consisting of two fifty-percent shareholders represented both the corporate entity and the individual shareholders as well); *In re Berger McGill Inc.,* 242 B.R. 413, 421 (Bankr. S.D. Ohio 1999) (belief of debtor's controlling shareholder that debtor's attorney was also his attorney was reasonable where there was no record that anyone from firm ever advised creditor that he should retain separate counsel before executing documents, and there was nothing in the record that would have led creditor

the Fifth Circuit in *United States v. Edwards,* 39 F. Supp.2d 716 (M.D. La. 1999), where it observed as follows:

"As a general rule, an attorney for a corporation represents the corporation, and not its shareholders. The issue of attorney-client relationship becomes more complicated in the case of a small closely-held corporation with only a few shareholders or directors. In such cases, the line between individual and corporate representation can become blurred. The determination whether the attorney represented the individual of the small closely-held corporation is fact-intensive and must

---

to believe that his interests differed from those of debtor at that time); *In re Legal Econometrics Inc.,* 191 B.R. 331, 346-47 (Bankr. N.D. Tex. 1995), *aff'd in relevant part sub nom, Vaughn v. Akin, Gump, Hauer & Feld L.L.P.,* no. 3-95-CV-0457-R, 1997 WL 560617(N.D. Tex. Aug. 29, 1997) (where corporation's lawyers had performed various services on shareholder's behalf and had communicated with him directly without contacting his other attorneys for period of almost two years, attorney-client relationship between corporation's lawyers and shareholder was formed); *Matter of Nulle,* 620 P.2d 214, 217 (Ariz. 1980) (quoting *Brownstein* and stating that the conclusion that the corporation's attorney did not represent shareholders "would require blinding ourselves to . . . realities"); *Boisdore v. Bridgeman,* 502 So.2d 1149, 1152 (La. Ct. App. 1987) (relationship formed where shareholder went to attorney for legal advice in financing of property, attorney prepared paperwork for corporation in his law office and attorney's secretary acted as incorporator); *Tekni-Plex Inc. v. Meyner & Landis,* 674 N.E.2d 663, 671 (N.Y. 1996) (concluding that there was an insufficient record to determine if corporate attorney formed a relationship with shareholder); and *Meyer v. Mulligan,* 889 P.2d 509, 514-16 (Wyo. 1995) (finding issues of fact as to whether shareholder and corporation's attorney had entered into an attorney-client relationship). Cf. *Philadelphia Hous. Auth. v. American Radiator & Standard Sanitary Corp.,* 294 F. Supp. 1148, 1150 (E.D. Pa. 1969) (an attorney-client relationship existed between an unincorporated trade association's attorney and its members).

be considered on a case-by-case basis. The court in *Rosman v. Shapiro*[, 653 F. Supp. 1441 (S.D.N.Y 1987),] noted that although corporate counsel does not ordinarily become counsel for the shareholders and directors, in a closely-held corporation consisting of only two shareholders, 'it is indeed reasonable for each shareholder to believe that the corporate counsel is in effect his own individual attorney.' The court in *Sackley v. Southeast Energy Group Ltd.* set forth a number of factors which could be considered: (1) 'whether the attorney ever represented the shareholder in individual matters;' (2) 'whether the attorneys' services were billed to and paid by the corporation;' (3) 'whether the shareholders treat the corporation as a corporation or as a partnership;' and (4) 'whether the shareholder could reasonably have believed that the attorney was acting as his individual attorney rather than as the corporation's attorney.' " 39 F. Supp.2d at 731-32. (footnotes omitted)

The American Bar Association Committee on Ethics and Professional Responsibility has established a similar, yet distinguishable, list of criteria to be considered when determining whether an attorney-client relationship has been formed between a partnership's attorney and an individual partner:

"Whether such a relationship has been created almost always will depend on an analysis of the specific facts involved. The analysis may include such factors as whether the lawyer affirmatively assumed a duty of representation to the individual partner, whether the partner was separately represented by other counsel when the partnership was created or in connection with its affairs, whether the lawyer had represented an individual partner before undertaking to represent the partnership,

and whether there was evidence of reliance by the individual partner on the lawyer as his or her separate counsel, or of the partner's expectation of personal representation." Amer. Bar Ass'n Comm. on Eth. & Prof. Resp. inf. op. 91-361 at 6 (1991).

Although the opinion 91-361 test is aimed at representation in the context of a partnership, the opinion states that "[t]here is no logical reason to distinguish partnerships from corporations or other legal entities in determining the client a lawyer represents." *Id.* at 3.[11] See also, *Hopper v. Frank,* 16 F.3d 92, 96 (5th Cir. 1994) (applying opinion 91-361 factors to corporate attorney and shareholder); *Meyer v. Mulligan,* 889 P.2d 509, 514 (Wyo. 1995) (the factors in opinion 91-361 "are relevant to and offer guidance in the determination of when a closely-held corporation's attorney has established an attorney-client relationship with one of the corporation's incorporators, shareholders, or managers because partnerships and closely-held corporations combine many similar characteristics"). Numerous courts have relied on the factors specified in opinion 91-361 and *Edwards,* even when not citing them by name. See *e.g., Mayer-Wittmann Joint Ventures Inc. v. Gunther Int'l Ltd.,* no. CV 93 0134790 S, 1994 WL 271795 at *3-*4 (Conn. Super. Ct. June 6, 1994) (focusing generally on shareholder's reasonable belief). Cf. *Herrick Co. v. Vetta Sports Inc.,* no. 94 Civ. 0905 (RPP), 1996 WL 691993 at *18 (S.D.N.Y. 1996) (finding an attorney-client relationship between the constituents of a joint venture and the joint venture's attorney "depends on the nature of advice and assistance given to

---

11. This principle supports the elimination of the third factor set forth in *Edwards.*

the alleged client by the attorney, the context in which that advice was solicited, the attorney's statements regarding this advice, and the reasonableness of the client's expectation of an attorney-client relationship"); *Sheinkopf*, 927 F.2d at 1266 (corporate attorney did not represent shareholder where there was "no history of a pre-existing attorney-client relationship; no fee arrangement in place (or even discussed); no retainer paid; no particularized discussions of the legal ramifications of the deal" and shareholder was regularly represented by other counsel).[12]

12. In addition, much ink has been spilled debating the merits of extending the attorney-client relationship to a corporate client's shareholders and how to determine whether such a relationship has been formed. See *e.g.*, Miriam P. Hechler, *The Role of the Corporate Attorney Within the Takeover Context: Loyalties to Whom?*, 21 Del. J. Corp. L. 943 (1996) (examining lawyers' roles in a takeover context and the ethical conflicts that arise in the performance of such roles); Ellen A. Pansky, *Between an Ethical Rock and a Hard Place: Balancing Duties to the Organizational Client and its Constituents*, 37 S. Tex. L. Rev. 1167 (1996) (discussing conflicts of interest in representing both a corporation and its management and shareholders); Nancy J. Moore, *Expanding Duties of Attorneys to "Non-Clients": Reconceptualizing the Attorney-Client Relationship in Entity Representation and Other Inherently Ambiguous Situations*, 45 S.C. L. Rev. 659 (1994) (discussing policy effects of broad and ambiguous attorney responsibilities); Lawrence E. Mitchell, *Professional Responsibility and the Close Corporation: Toward a Realistic Ethic*, 74 Cornell L. Rev. 466 (1989) (examining a lawyer's conflicting roles in advising close corporation and proposing ethics rules). This discussion includes at least two approaches proposed as alternatives to the *Edwards* and opinion 91-361 tests. See Brian J. Pechersky, *Representing General Partnerships and Close Corporations: A Situational Analysis of Professional Responsibility*, 73 Tex. L. Rev. 919 (1995) (advocating use of situational analysis to determine client identity); *An Expectations Approach to Client Identity*, 106 Harv. L. Rev. 687 (1993) (proposing a reasonable constituent's expectation approach to client identity). Neither of these tests has been adopted by any court in any published opinion.

The relevant case law and literature, therefore, suggest that the following criteria are helpful in determining whether a corporation's attorney has entered into an attorney-client relationship with the corporation's shareholder:

(1) Whether the shareholder was separately represented by other counsel when the corporation was created or in connection with its affairs;

(2) Whether the shareholder sought advice on and whether the attorney represented the shareholder in particularized or individual matters, including matters arising prior to the attorney's representation of the corporation;

(3) Whether the attorney had access to shareholder's confidential or secret information that was unavailable to other parties;

(4) Whether the attorneys' services were billed to and paid by the corporation or the shareholder;

(5) Whether the corporation is closely held;

(6) Whether the shareholder could reasonably have believed that the attorney was acting as his individual attorney rather than as the corporation's attorney;

(7) Whether the attorney affirmatively assumed a duty of representation to the shareholder by either express agreement or implication;

(8) Whether the matters on which the attorney gave advice are within his or her professional competence;

(9) Whether the attorney entered into a fee arrangement; and

(10) Whether there was evidence of reliance by the shareholder on the attorney as his or her separate coun-

sel or of the shareholder's expectation of personal representation.[13]

An examination of the facts of this case reveals few factors that support finding an attorney-client relationship between the defendants and the Spector firm. The defendants concede that they were represented by other counsel in the transaction. Motion at ¶5.[14] In addition, the defendants neither assert nor present any record of a prior relationship between themselves and the Spector firm.[15] They also fail to allege a request by the defendants to the Spector firm for representation.[16] Moreover, it appears that the Spector firm never entered into any express agreement or fee arrangement with the defendants, never submitted a bill to, or received a retainer from, the defendants and never gave the defendants particularized legal advice. Fitzgerald affidavit at ¶3.[17]

---

13. This list incorporates the elements set forth by the Pennsylvania Superior Court in *Atkinson,* as well as the significant factors mentioned in *Edwards* and opinion 91-361. Notably absent from the set of factors considered by any other court, and thus from this list, is whether the shareholders generally benefitted from work done by the corporation's attorneys.

14. According to First Republic, the defendants were represented by Kirkpatrick & Lockhart LLP and Wolf, Block, Schorr & Solis-Cohen LLP in the transaction. Fitzgerald affidavit at ¶3.

15. In his affidavit, Edward G. Fitzgerald, a principal of the Spector firm, contends that "neither he nor the Spector firm nor any Spector firm attorney has ever represented any of the defendants." Fitzgerald affidavit at ¶8. In contrast, Fitzgerald avers that the Spector firm has represented First Republic for more than eight years. *Id.* at ¶7.

16. Fitzgerald specifically denied that the defendants ever asked the Spector firm to represent them. Fitzgerald affidavit at ¶2.

17. Under Philadelphia Civil Rule 206.1 and Pennsylvania Rule of Civil Procedure 206.7, where the answer to a motion raises conflicting issues of material fact, a court generally must order discovery in some form. In the context of this motion, however, the defendants have not

The defendants contend that the Spector firm had "full and unfettered access to [Fidelity's] financial records," as well as "information concerning all aspects of its operations, management and corporate structure, as well as information concerning the Fidelity shareholders." Motion at ¶6. As a practical matter, it is common in corporate practice for a corporation's attorney to have frequent access to confidential corporate records, including information about the corporation's shareholders, through such activities as due diligence. If such everyday activity created an implied relationship between the attorney and the shareholders, then it would erase the distinction between a corporate client and the corporation's shareholders and would render Rule 1.13(a) meaningless.

Given the regular practice described *supra,* the Spector firm's access to Fidelity information is to be expected, as the Spector firm was engaged in a due diligence review of Fidelity for First Republic and also was representing Fidelity at the time. Fitzgerald affidavit at ¶¶16-17. As a result, the Spector firm's access to Fidelity's records, regardless of what such records revealed about the defendants, does not support an extension of the legal relationship to the defendants.

The assertion that the Spector firm did work for the defendants is equally unpersuasive. While the shareholders may have benefitted from the Spector firm's work, it is not uncommon for counsel of different parties in a transaction to divide responsibilities in such a way that one party's attorney is wholly responsible for a particu-

---

contradicted any of First Republic's assertions, removing the need for additional fact finding.

lar facet of the transaction.[18] Merely working toward the common goal of consummating the transaction, however, does not give rise to an attorney-client relationship with the other parties to that transaction. If a legal relationship could be created in this manner, an attorney representing one party in a commercial transaction would almost invariably end up representing all of the parties in the transaction.[19] Because this conclusion is untenable, the development of an attorney-client relationship must require that an attorney counsel the shareholder specifically and particularly.

Here, the defendants maintain that the Spector firm drafted some of the transaction documents and the closing checklist for the transaction. Brand affidavit at ¶¶5, 8. While these actions no doubt benefitted the defendants, they also advanced the interests of all the other parties to the transaction and do not amount to advice provided specifically to the defendants. Thus, they do not support the defendants' contention that they had a legal relationship with the Spector firm.

The defendants' remaining allegations consist of little more than general assertions that the Spector firm provided them with "legal advice" and had access to "confidential information." These ambiguous and general statements contrast sharply with the details provided throughout the defendants' submissions to show First Republic's and Fidelity's relationships with the Spector

18. This appears to be exactly what happened in the transaction. See Fitzgerald affidavit at ¶6 (defendants' counsel handled licencing issues and Phoenix's counsel prepared employment agreements); *Id.* at ¶15 (defendants' counsel prepared transaction purchase agreement).

19. The defendants appear to embrace this conclusion, as they argue that the Spector firm represented "all parties in connection with the transaction." Brand affidavit at ¶8.

firm.[20] Even when viewed as a whole, the motion's vague and conclusory allegations do not support finding that an attorney-client relationship existed between the defendants and the Spector firm. See *Commonwealth v. Sal-Mar Amusements Inc.,* 428 Pa. Super. 321, 328, 630 A.2d 1269, 1273 (1993) (trial court properly denied motion for recusal where allegations forming the basis of the motion were "vague and unfounded"); *Central Penn National Bank v. Williams,* 362 Pa. Super. 229, 235, 523 A.2d 1166, 1169 (1987) (movant's conclusive statement that he had a meritorious defense was "self-serving" and did not warrant opening the judgment confessed against him). See also, *Sheinkopf,* 927 F.2d at 1266 ("ambiguous" and "amorphous" allegations by purported client did not support finding the existence of a legal relationship); *Rice v. Strunk,* 670 N.E.2d 1280, 1288 (Ind. 1996) (where assertions of legal representation were conclusory, they did not raise issues of fact).

---

20. For examples of these details, see defendants' memorandum at 17 (detailing confidential Fidelity documents reviewed by the Spector firm); Brand affidavit at ¶7 (describing the Spector firm's representation of Fidelity in connection with a loan from Summit Bank); *Id.* at ¶9 (detailing services provided by the Spector firm to Fidelity after the transaction's completion); *Id.* at ¶11 (describing the Spector firm's representation of Fidelity in negotiations for the sale of its assets to Keystone Bank); *Id.* at exhibit 3 (detailing operations and management of Fidelity as revealed by the Spector firm's due diligence review of Fidelity's records on behalf of First Republic); *Id.* at exhibit 4 (requesting waiver from Summit Bank to allow the Spector firm's representation of Fidelity); and *id.* at exhibit 11 (setting forth the Spector firm's claims against Fidelity's bankruptcy estate). Because the Spector firm's relationship with Fidelity is acknowledged and largely irrelevant to the motion, the inclusion of such details is puzzling.

The only real support for the defendants' argument is the language in the cover letter of an invoice from the Spector firm to Fidelity, which states that the enclosed invoice is for work done on behalf of Fidelity and its investors. It must be noted, however, that this letter is addressed to Donald L. Salmon as president of Fidelity. In addition, the invoices attached to the defendants' own motion indicate that the charges were billed to Fidelity, not the shareholders. Brand affidavit exhibit 2. While the court does not share Fitzgerald's "annoyance" at the defendants' use of this letter, it must agree with his statement that the Spector firm "never represented [the defendants] for any task for any purpose at any time." Fitzgerald affidavit at ¶19. Thus, there is no basis for finding a violation of Rule 1.9.

## II. *Rule 3.7 Requires Disqualification of an Advocate-Witness at Trial Only, and the Motion Is Premature*

Another basis for the defendants' motion to disqualify the Spector firm is rooted in an alleged violation of the advocate-witness rule. Pennsylvania has adopted the common-law prohibition on an attorney functioning as both an advocate and a witness:

"(a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness except where:

"(1) the testimony relates to an uncontested issue;

"(2) the testimony relates to the nature and value of legal services rendered in the case; or

"(3) disqualification of the lawyer would work substantial hardship on the client." Rule 3.7. See also, *Com-*

*monwealth v. Gibson,* 448 Pa. Super. 63, 70, 670 A.2d 680, 683 (1996) ("appearance of an attorney as both advocate and witness at trial is considered highly indecent and unprofessional conduct to be avoided by counsel and to be strongly discountenanced by colleagues and the courts").

While there is no binding and clear decision as to when Rule 3.7 may be applied, the consensus in Pennsylvania is that an attorney-witness is permitted to participate in pretrial activity and may not be disqualified under Rule 3.7 until trial.[21] This position is in line with the interpretation given to the equivalent of Rule 3.7 in other jurisdictions.[22] As such, any motion seeking dis-

---

21. See *Davisair Inc. v. Butler Air Inc.,* 40 D.&C.4th 403, 406 (C.P. Allegheny 1998) (Wettick, J.) ("[t]here is no prohibition against [an attorney-witness] providing representation prior to the trial"); *Golomb & Honik v. Ajaj,* November term 2000, no. 425 (C.P. Phila. Apr. 5, 2001) (Herron, J.) (motion for disqualification under Rule 3.7 eight months prior to trial was premature) (available at http://courts.phila.gov/cptcvcomp.htm); Pa. Bar Ass'n Comm. on Leg. Eth. & Prof. Resp. inf. op. no. 96-15 (1996) at 1 ("there is no . . . bar to an attorney witness acting as an advocate in pretrial proceedings"); Pa. Bar Ass'n Comm. on Leg. Eth. & Prof. Resp. inf. op. no. 94-153 at 2 (1994) ("[t]he key words in [Rule 3.7] are 'act as advocate at a trial.' Accordingly, the proscription is only with reference to 'a trial'"); Pa. Bar Ass'n Comm. on Leg. Eth. & Prof. Resp. inf. op. no. 92-150 at 2 (1992) ("insofar as the nature of your legal representation involves negotiation and trial preparation work, as opposed to the actual representation of the corporation in a trial, the rule would not prohibit you . . . from representing the corporation"); Phila. Bar Ass'n Prof. Guid. Comm. guid. req. no. 88-35 at 1 (1988) ("it is premature to require your withdrawal during pretrial proceedings because Rule 3.7 only precludes a lawyer-witness from acting as counsel at trial").

22. See Amer. Bar Ass'n Ann. Model R.P.C. 3.7, cmt. ("in most jurisdictions, a lawyer who is likely to be a necessary witness may still represent a client in the pretrial stage"). See also, *e.g., Culebras Enters.*

qualification of an attorney under Rule 3.7 alone generally is premature if submitted prior to trial.

The projected trial date in this matter is February 4, 2002. Thus, the motion cannot be granted at present on the basis of Rule 3.7, as it comes at least nine months before trial.

## CONCLUSION

The defendants have not shown that they ever had an attorney-client relationship with the Spector firm, precluding the court from granting the motion under Rule 1.9. In addition, Rule 3.7 prohibits an attorney-witness from acting as an advocate at trial only, allowing the Spector firm to continue its representation of First

---

*Corp. v. Rivera-Rios,* 846 F.2d 94, 97 (1st Cir. 1988) (agreeing that advocate-witness rule did not prevent attorneys from acting as party's "solicitors" prior to trial); *Jones v. City of Chicago,* 610 F. Supp. 350, 363 (N.D. Ill. 1984) (allowing attorney-witness and his firm to handle pretrial matters); *Columbo v. Puig,* 745 So.2d 1106, 1107 (Fla. Ct. App. 1999) ("a lawyer may act as an advocate at pretrial (before the start of the trial) and post-trial (after the judgment is rendered) proceedings"); *Anderson Producing Inc. v. Koch Oil Co.,* 929 S.W.2d 416, 422 (Tex. 1996) (advocate-witness rule "only prohibits a testifying attorney from acting as an advocate before a tribunal, not from engaging in pretrial, out-of-court matters such as preparing and signing pleadings, planning trial strategy, and pursuing settlement negotiations"); ABA Comm. on Eth. & Prof. Resp. inf. op. 89-1529 (1989) (although there are "some limitations" on pretrial representation, "a lawyer may serve as an advocate in taking depositions of witnesses and engaging in other pretrial discovery as well as in arguing pretrial motions and appeals from decisions on those motions as long as the other requirements of Rule 3.7 are met"). But, see *e.g., Massachusetts Sch. of Law at Andover Inc. v. American Bar Ass'n,* 872 F. Supp. 1346, 1380-81 (E.D. Pa. 1994), *aff'd,* 107 F.3d 1026 (3d Cir. 1997) (disqualifying attorney-witnesses from "not only acting as trial counsel, but also from taking depositions and arguing pretrial matters in court").

Republic at least until that point. As a result, the motion is denied.

ORDER

And now, April 30, 2001, upon consideration of the motion to disqualify Spector Gadon & Rosen P.C. as counsel for plaintiff First Republic Bank, filed by defendants Steven D. Brand, James M. Dougherty, Arthur L. Powell, Richard S. Powell, Jon R. Powell, Carol P. Heller, Nancy E. Powell, Harold G. Schaeffer, James R. Schaeffer, Anthony L. Schaeffer and Robert D. Schaeffer, and the response of the plaintiff thereto, and in accordance with the memorandum opinion being filed contemporaneously with this order, it is hereby ordered and decreed that the motion is denied.