578 A.2d 550

**Harry D. MILLER, III and A Potty on the Spot, Inc., Petitioners,**

v.

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Respondent.**

**COMMONWEALTH of Pennsylvania, DEPARTMENT OF ENVIRONMENTAL RESOURCES, Petitioner,**

v.

**Harry D. MILLER, III and A Potty on the Spot, Inc., Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 8, 1990.

Decided May 31, 1990.

As Corrected July 9, 1990.

328

Paul A. Logan, Powell, Trachtman, Logan & Carrle, King of Prusia, for petitioners/respondents, Harry D. Miller, III and A Potty On The Spot, Inc.

Amy L. Putnam, Deputy General Counsel, for respondent/petitioner, Dept. of Environmental Resources.

Sandra S. Christianson, Chief Counsel, with her, Richard C. Lengler, Harrisburg, for amicus curiae, Dept. of Labor and Industry.

William J. Cressler, Asst. Chief Counsel, with him, John L. Heaton, Chief Counsel, for amicus curiae, Dept. of Transp.

Before COLINS, PALLADINO and PELLEGRINI, JJ.

PELLEGRINI, Judge.

In *Department of Environmental Resources v. Board of Claims,* 86 Pa.Commonwealth Ct. 99, 483 A.2d 1070 (1984), this Court denied the Department of Environmental Resource's (DER) request for a writ of prohibition with which it sought to prevent the Board of Claims (Board) from exercising subject matter jurisdiction over the complaint filed by Harry D. Miller, III and A Potty on the Spot, Inc., (Miller) against DER. We found there that Miller was arguably entitled to equitable consideration of his claim that, because of DER's allegedly erroneous revocation of a permit allowing the agricultural use of sewage sludge (septage) on Miller's Christmas tree farm as a method of disposing of the septage collected from his portable toilet and cesspool cleaning business, Miller and his business were entitled to damages for the period between the revocation and the subsequent reissuance of the permit.

The Board asserted subject matter jurisdiction under The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* 72 P.S. §§ 1–1827.10. Acknowledging that there existed no contractual relationship over which it could exercise jurisdiction, the Board premised its jurisdiction under the Fiscal Code upon the decision in *Lowry v. Commonwealth,* 365 Pa. 474, 76 A.2d 363 (1950). *Lowry* emphasizes that the Fiscal Code is to be liberally construed to include virtually every type of claim except those for which special remedies are otherwise provided, and actions for negligence or for consequential damages.

We denied DER's petition for the writ because of our finding that Miller was arguably entitled to an equitable consideration of his claim and that, accordingly, DER had failed to establish both that the Board's assertion of juris-

diction was clearly erroneous, *Akron Borough v. Pennsylvania Public Utility Commission*, 453 Pa. 554, 561, 310 A.2d 271, 271 (1973), and that the remedy of raising the jurisdictional issue on appeal was inadequate.

 Now comes the appeal after hearing and decision by the Board.[1] Indeed, both Miller and DER appeal here from the Board's opinion and order which found that DER improperly revoked the permit allowing agricultural use of septage and that Miller suffered compensable damage as a result of the permit revocation, and which in turn awarded Miller damages in the amount of $84,552.75.

Although the Board awarded damages calculated to confer upon Miller the benefit of which he was deprived by the revocation, Miller seeks on appeal the damages alleged for not only the three years loss of growth to the Christmas trees bought while the permit was originally in force but also for the retarding effect which the septage deprivation had on trees bought and planted in anticipation of the permit's issuance and on trees bought after the permit's revocation. Miller also seeks prejudgment interest and, as incidental damages, the attorneys' fees related to cases other than the instant litigation which arose because of the permit's revocation.

DER now raises as it did before the Board the question of the Board's subject matter jurisdiction over this case, contending that the revocation was effected pursuant to the Commonwealth's police powers and that liability consequently does not attach. DER submits as well that jurisdiction is statutorily committed to the Environmental Hearing Board, Act of July 13, 1988, P.L. 530, 35 P.S. §§ 7511–7516, repealing and replacing Section 1921–A of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* formerly 71 P.S. § 510–21. *See also* 25 Pa.Code § 21.1. DER further contends that sovereign immunity

1. Our scope of review of an order of the Board of Claims is limited to determining whether necessary factual findings are supported by substantial evidence and whether an error of law was committed. *Pennsylvania Department of Transportation v. Dyberry Sand and Gravel, Inc.,* 117 Pa.Commonwealth Ct. 101, 542 A.2d 650 (1988).

bars awarding Miller consequential damages and that the six month statute of limitations had run in which to challenge the revocation prior to the filing of this action.

The Board of Claims finds its roots in the former Board of General Claims and Board of Arbitration of Claims. The Act of March 30, 1811, P.L. 145, (5 Sm.L. 228) (Act of 1811), provided that the Auditor General along with the State Treasurer adjust and settle claims against the Commonwealth. As the practice evolved, the two officers sitting together to hear claims against the Commonwealth constituted the Board of General Claims. The Fiscal Code effectively codified the practice initiated under the Act of 1811.

The Board of General Claim's functions were consolidated with those of the Board of Arbitration of Claims in 1978 when the provisions of The Fiscal Code providing for the Board of General Claims were repealed and the jurisdiction of the Board of Arbitration of Claims was enlarged to include that formerly exercised by the Board of General Claims by Sections 3 and 8a of the Act of October 5, 1978, P.L. 1104. The name of the Board of Arbitration of Claims was simultaneously changed to the current Board of Claims. Section 2 of the Act of October 5, 1978, P.L. 1104, 72 P.S. § 4651-1.

The Board of Claims, as currently constituted, has jurisdiction as defined by Section 3 of the Act of October 5, 1978, P.L. 1104, 72 P.S. § 4651-4:

The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more. The board shall also have exclusive jurisdiction to hear and determine those claims authorized by the act of March 30, 1811 (P.L. 145, Ch. XCIX), entitled "An act to amend and consolidate the several acts relating to the settlement of the public accounts and the payment of the public monies, and for other purposes," and continued by Article X, act of April 9, 1929 (P.L. 343, No. 176), known as "The Fiscal Code,"

wherein the Auditor General and State Treasurer were granted the power to adjust and settle certain claims against the Commonwealth.

The Fiscal Code jurisdiction referred to is set forth in Section 1003 of The Fiscal Code, 72 P.S. § 1003:

The Auditor General and State Treasurer shall continue to have the power to adjust and settle claims against the Commonwealth, as now provided by law, and they shall settle an account with any claimant against the Commonwealth in the manner following:

When the Department of the Auditor General shall have examined and adjusted any claim against the Commonwealth, it shall submit the same, together with the vouchers and all other papers and information appurtenant thereto, to the Treasury Department for its revision and approbation. Thereafter, the procedure shall be the same as in the case of the audit of requisitions as hereinafter in this act provided.

Implementing regulations further describe the Board's Fiscal Code jurisdiction as consisting of claims against the Commonwealth arising from:

(1) the furnishing of goods or services, or both, to the Commonwealth, where the furnishing of such goods or services, or both, is not within the terms of a valid, existing contract between the Commonwealth and the claimant, or, if under a contract with the Commonwealth and the claimant, where the amount of the claim is less than $300.00.

(2) Action or inaction by Commonwealth employes giving rise to an implied contract to compensate the claimant.

61 Pa.Code § 851.2.

The Board exercises both law and equity jurisdiction, Section 405 of The Fiscal Code, 72 P.S. § 405, and claims arising under the Board's jurisdiction are excepted from the bar of sovereign immunity. Section 4(c) of the Act of September 28, 1978, P.L. 788; *see* 1 Pa. C.S. § 2310. We observe that the equity jurisdiction of the Board extends to

all cases instituted in the form of contract actions, namely quasi contract claims and claims in quantum meruit. *See Lowry v. Commonwealth*, 365 Pa. 474, 76 A.2d 363 (1950); *see also In re Legislative Route 1018, Section 4*, 429 Pa. 254, 239 A.2d 343 (1968); *and also Department of General Services v. Lhormer Real Estate Agency, Inc.*, 120 Pa.Commonwealth Ct. 604, 549 A.2d 1008 (1988).

The principal question now before this Court is whether Miller's claim for damages arising from DER's allegedly improper revocation of his permit to use septage for agricultural purposes falls within the equitable sphere of the Board of Claims' Fiscal Code jurisdiction.

 We find that Miller's claim for damages, stemming from an allegedly improper revocation of a permit granted to him by DER to use septage for agricultural purposes, is an action sounding in tort. Consequently, the Board was without jurisdiction to hear Miller's action because the Board's jurisdiction extends only to matters in assumpsit. Section 405 of The Fiscal Code as interpreted by our Supreme Court in *Lowry* does not confer jurisdiction upon the Board beyond matters in the context of contractual claims. What is more, the waiver of sovereign immunity which permits assumpsit actions against the Commonwealth was not intended to extend to claims other than contract claims and those in the form of contract claims.

 We also find that DER's revocation of Miller's permit was an exercise of the Commonwealth's police power through regulation under the old Pennsylvania Solid Waste Management Act, Act of July 31, 1968, P.L. 788, *as amended,* repealed by the Act of July 7, 1980, P.L. 380 *as amended,* formerly 35 P.S. §§ 6001–6017. Unlike in *Lowry*, the tortious action complained of by Miller constitutes an exercise of police power.

> [P]olice power is the inherent power of a body politic to enact and enforce laws for the promotion of the general welfare. It has long been recognized that property rights are not absolute and that persons hold their property

"subject to valid police regulation, made, and to be made for the health and comfort of the people ..." (citations omitted) It must be recognized that one who challenges the constitutionality of the exercise of the state's police power, affecting a property interest, must overcome a heavy burden of proof to sustain that challenge....

[ ... ]

'To justify the State in ... interposing its authority in behalf of the public, it must appear, first, that the interests of the public generally, as distinguished from those of a particular class, require such interference; and, second, that the means are reasonably necessary for the accomplishment of the purpose, and not unduly oppressive upon individuals....' (citation omitted).

*Pennsylvania Department of Environmental Resources Appeal*, 91 Pa.Commonwealth Ct. 381, 385–86, 497 A.2d 284, 287 (1985) (quoting, *Commonwealth v. Barnes & Tucker Co*, 472 Pa. 115, 371 A.2d 461 (1977)). In *Department of Environmental Resource's Appeal*, we found that DER had reasonably restricted the use of Canon Development Co., Inc.'s (Canon) land when DER notified Canon by letter of the soil contamination findings stemming from certain residual radioactive materials. DER instructed Canon to take certain steps restricting the use of its land, as a result of which at least one tenant was forced out. We concluded that DER's action at that juncture constituted an exercise of police power and not a *de facto* taking.

Police power should not be confused with that of eminent domain. Police power controls the use of property by the owner for the public good, its use otherwise being harmful, while eminent domain and taxation take property for public use. Under eminent domain, compensation is given for property taken, injured or destroyed, while *under the police power no payment is made for a diminution in use*, even though it amounts to an actual taking or destruction of property.

*Reilly v. Department of Environmental Resources*, 37 Pa.Commonwealth Ct. 608, 611–612, 391 A.2d 56, 58 (1978)

(emphasis added) (quoting *White's Appeal,* 287 Pa. 259, 264–65, 134 A. 409, 411 (1926)). In *Reilly,* we held that the Luzerne County Commissioners' exercise of their regulatory power to rezone a parcel from Conservation C–1 to Suburban Residence S–1 and then back to C–1 did not constitute a taking, depriving the owners of use and enjoyment of their property. The enactment of an ordinance rezoning property, which thereby restricts its use, is an exercise of municipal police power.

No matter how seemingly complete our scheme of private ownership may be under our system of government, all property is held in subordination to the right of its reasonable regulations by the government clearly necessary to preserve the health, safety, or morals of the people.

*Northeast Outdoor Advertising Appeal,* 69 Pa.Commonwealth Ct. 609, 612, 452 A.2d 83, 85 (quoting *Reilly* quoting *White's Appeal* ). In *Northeast Outdoor Advertising Inc.'s Appeal,* we held that the removal of Northeast's billboards by DOT pursuant to authority granted in Section 10 of the Outdoor Advertising Control Act, Act of December 15, 1971, P.L. 596, *as amended,* 36 P.S. § 2718.110, when Northeast failed to request the required permits for these advertising devices was not a compensable taking under eminent domain proceedings because the billboards were removed pursuant to the Commonwealth's regulatory police power.

Given the precedent established by these cases, we must conclude that DER's action in issuing the permit in question pursuant to the former Pennsylvania Solid Waste Management Act was an exercise of the Commonwealth's police power. The permit allowed Miller to utilize 30,000 gallons of septage per acre per year on twenty acres of his farm as fertilizer. The revocation was premised on an assessment that the presence of high concentrations of certain heavy metals in the soil at Miller's farm posed a public health threat. While additional soil testings showed results permitting the re-issuance of the permit, accompanied by addi-

tional reporting requirements, the exercise of the precautionary measure to revoke the license, nonetheless, represents police power action intended to avert the risk of undue hazard to the public.

We further observe that even if our Supreme Court's decision in *Lowry* were to extend the Board's jurisdiction to include the tort action brought by Miller and we were to accept the Board's conclusions that DER unreasonably interfered with Miller's agricultural use of septage by revoking his permit, sovereign immunity shields the Commonwealth from any consequential liability because Miller's claim does not fall within any of the statutorily permitted exceptions to sovereign immunity for tort liability.

Sovereign immunity, established under Art. 1, § 11 of the Pennsylvania Constitution and statutorily instituted by the General Assembly, 1 Pa.C.S. § 2310, has been waived only in those instances enumerated under the provisions of 42 Pa.C.S. § 8522. This section reflects the legislature's intention to waive the Commonwealth's constitutional right to immunity only in the instance of certain activities sounding in tort. Ordinarily, the Commonwealth is not amenable to suit on complaints respecting actions sounding in tort. *Jones v. Packel,* 20 Pa.Commonwealth Ct. 606, 342 A.2d 434 (1975) (claim for false imprisonment); *Lerro v. Pennsylvania Department of Transportation,* 32 Pa.Commonwealth Ct. 372, 379 A.2d 652 (1977) (claim for trespass and nuisance); *Koynok v. Commonwealth,* 12 Pa.Commonwealth Ct. 375, 316 A.2d 118 (1974) (suits seeking money damages are within the rule of immunity). Because the instant action stating a claim for consequential damages is not cognizable within the immunity exceptions and because it sounds roundly in the ambit of tortious conduct, we must conclude that Miller's action is barred by sovereign immunity.

Having found that Miller's action is not cognizable within The Fiscal Code jurisdiction of the Board of Claims, we must find that the Board of Claims' order, awarding

damages, is legally erroneous. Moreover, because we have found that DER's revocation of Miller's permit was an exercise of the police power for which the Commonwealth is immune from liability and because Miller's action does not lie within a statutory exception to sovereign immunity, we must find that Miller's complaint for damages stemming from DER's revocation is unactionable.

Accordingly, we do not and need not address the other issues raised by either of the parties or amici curiae to achieve a just disposition of the instant matter. Thus, because the Board exceeded its jurisdiction and ruled on the merits, we now reverse.

## ORDER

AND NOW, this 31st day of May, 1990, the order of the Board of Claims in the above-captioned matter, docketed at No. 865 and dated August 16, 1989 is hereby reversed.

CRUMLISH, Jr., former President Judge, did not participate in the decision in this case.