**HANOVER INSURANCE COMPANY and Dependable Distribution Company, Petitioners**

v.

**STATE WORKERS' INSURANCE FUND OF the COMMONWEALTH of Pennsylvania and Department of Labor and Industry of the Commonwealth of Pennsylvania and Seabright Insurance Company and Dionis Nunez, Respondents.**

Commonwealth Court of Pennsylvania.

Argued March 9, 2011.

Decided Jan. 19, 2012.

---

Scott M. Russ, Mt. Laurel, NJ, for petitioners.

James D. Jordan, Scranton, for respondents State Workers' Insurance Fund and Department of Labor and Industry.

BEFORE: LEADBETTER, President Judge [1], and McGINLEY, Judge, and PELLEGRINI, Judge, and COHN JUBELIRER, Judge, and BROBSON, Judge, and McCULLOUGH, Judge, and BUTLER, Judge.[2]

OPINION BY Judge McCULLOUGH.

Before the court is the preliminary objection filed by the Department of Labor and Industry and State Workers' Insurance Fund (SWIF) to a complaint in our original jurisdiction filed by Hanover Insurance Company and Dependable Distribution Company (together, Petitioners) pursuant to the Declaratory Judgments Act, 42 Pa.C.S. §§ 7531–7541. Petitioners are seeking a declaration of their rights under an insurance policy issued by SWIF and are asserting a breach of contract claim against Seabright Insurance Company (Seabright). The Commonwealth respondents assert that jurisdiction over Petitioners' claim against SWIF lies solely

---

1. This case was assigned to the opinion writer before Judge Pellegrini succeeded Judge Leadbetter as President Judge.

2. This case was decided before Judge Butler's term ended on January 2, 2012.

with the Board of Claims (Board). We agree.

■ The following summary is drawn from the allegations in Petitioners' complaint.[3] Dionis Nunez (Nunez) sustained a work-related injury while working at premises occupied by Dependable Distribution Company (Dependable). Dependable leased the property from W. & W. Realty, Inc., and both parties are named as defendants in a personal injury action filed by Nunez. Dependable had liability insurance under a policy from Hanover Insurance Company (Hanover). In accordance with that policy, Hanover retained counsel and continues to defend Dependable in the personal injury action.

Nunez had been placed at his job with Dependable by Workforce USA, a temporary employment agency. While Nunez was supervised by Dependable, he was paid by Workforce. At all relevant times, Workforce had a policy of workers' compensation and employer's liability insurance issued by SWIF. The policy contained an alternate employers endorsement that identified Dependable as an alternate employer. The employer liability coverage afforded to Workforce under SWIF's policy provided coverage for bodily injury claims that fell outside the scope of the workers' compensation statute brought against Workforce by its employees. The alternate employers endorsement extended this employer liability coverage to Dependable with respect to such bodily injury claims brought against it by employees of Workforce who allegedly were injured in the course of their special or temporary

employment with Dependable. Pursuant to the terms of the SWIF policy, this liability coverage was intended to be primary over any other available coverage. On behalf of Dependable, Hanover made demands of SWIF to undertake Dependable's defense and indemnity in the lawsuit, which SWIF refused.

Dependable also had its own policy of workers' compensation and employer's liability insurance issued by Seabright Insurance. Hanover made demands of Seabright to undertake Dependable's defense which Seabright has not answered.

Pursuant to the "other insurance" and "contribution" provisions of Hanover's liability policy, Hanover has a right on behalf of Dependable and/or in its stead to pursue rights of contribution or indemnity against other insurance carriers obligated to provide liability coverage to Dependable.

Petitioners filed a complaint in our original jurisdiction. In Count I of the complaint, Petitioners seek judgment against SWIF and the Department, specifically requesting: a declaration that SWIF's policy provides primary coverage to Dependable for the claims asserted by Nunez; alternatively, a declaration that SWIF's policy provides concurrent liability coverage to Dependable; a declaration that SWIF must undertake the defense of Dependable; a declaration that SWIF must reimburse Hanover for defense costs and indemnity paid; and an award to Dependable and Hanover of attorneys' fees and costs incurred in the present Declaratory Judgment action.

---

3. In reviewing preliminary objections, we are required to accept as true all well-pled averments set forth in the pleadings and all inferences reasonably deducible therefrom. *Pennsylvania Builders Association v. Department of Labor & Industry*, 4 A.3d 215 (Pa.Cmwlth. 2010). However, we need not accept as true conclusions of law, unwarranted inferences,

argumentative assertions or expressions of opinion. *Id.* In order to sustain preliminary objections, it must appear with certainty that the law will not permit a different result; where any doubt exists as to whether the preliminary objections should be sustained, the doubt must be resolved in favor of overruling the preliminary objections. *Id.*

The Declaratory Judgments Act provides that relief will not be available under that statute with respect to any proceeding within the exclusive jurisdiction of a tribunal other than a court. 42 Pa.C.S. § 7541(a). SWIF has filed a preliminary objection to Count I of the complaint, asserting that the Board has exclusive jurisdiction to determine Petitioners' claims under the policy issued to Workforce by SWIF.

■ Pursuant to section 1724(a)(1) of the Procurement Code,[4] the Board has "exclusive jurisdiction to arbitrate claims arising from ... a contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies)." 62 Pa.C.S. § 1724(a)(1). According to SWIF, both Dependable's claim pursuant to the alternate employers endorsement in the policy issued to Workforce by SWIF and Hanover's claim to be a beneficiary, assignee, or subrogee under that policy fall within the Board's jurisdiction. SWIF asserts that the Board's role in disputes over SWIF's coverage is well settled. *State Workmens' Insurance Fund v. Caparo Real Estate*, 160 Pa.Cmwlth. 581, 635 A.2d 705 (1993). SWIF also maintains that, although the legislation cited by the court in *Caparo* was repealed and recodified, the reenacted statute has not narrowed the scope of the Board's jurisdiction. *Department of General Services v. Limbach Company*, 862 A.2d 713, 717 n. 6 (Pa.Cmwlth.2004), *aff'd*, 586 Pa. 479, 895 A.2d 527 (2006).

Petitioners respond that section 1724 of the Procurement Code grants the Board exclusive jurisdiction over "claims ... filed with the board in accordance with section 1712.1 (relating to contract controversies)" and does not apply to the present matter. Petitioners contend that the reference to section 1712.1, which states that "[a] contractor may file a claim," reflects that the claims over which the Board has jurisdiction are limited to those filed by a "contractor," which the Procurement Code defines as a "person that has entered into a contract with a Commonwealth agency," section 103 of the Procurement Code, 62 Pa.C.S. § 103, and Petitioners note that no contract exists between Petitioners and the Commonwealth respondents. In addition, Petitioners assert that all Pennsylvania cases that have analyzed this issue have involved contracts between state agencies and contractors or vendors, such as construction and building supply companies. Petitioners further contend that the cases upon which SWIF relies were decided under a predecessor statute that allowed for a considerably broader scope of jurisdiction than the current statute does.

Initially, we note that Pennsylvania courts have broadly construed the statute conferring jurisdiction of the Board of Claims. For example, in *Employers Insurance of Wausau v. Department of Transportation*, 581 Pa. 381, 865 A.2d 825 (2005), our Supreme Court held that where a plaintiff's claim is premised upon the assignment of rights incident to a contract entered into by the Commonwealth, both the assignment claim and any derivative equitable subrogation claim that "arises from" such contract is within the proper jurisdiction of the Board. In that case, Jack Lang, d/b/a Lang Construction Com-

---

4. Added by section 12.2 of the Act of December 3, 2002, P.L. 1147 (2002 Act).

   Section 21(a) of the 2002 Act repealed section 4 of the Act of May 20, 1937, P.L. 728, *as amended, formerly* 72 P.S. § 4651–4 ("Board of Claims Act"), which in relevant part provided that "[t]he Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth...."

pany, (Lang) entered into a contract with PennDOT for the paving and construction of a bridge. Lang obtained performance and payment bonds from Employers Insurance of Wausau (Wausau) as a surety. In accordance with the bond, Wausau and Lang executed a general indemnity agreement under which Lang assigned to Wausau the right to collect all sums due to Lang under the PennDOT/Lang contract, in the event Lang defaulted on its obligations to pay for material or labor.

Ultimately, Wausau filed suit against PennDOT asserting rights under the general indemnity agreement with Lang. Our Supreme Court rejected PennDOT's argument that Wausau was neither a party nor an intended third party beneficiary to the PennDOT/Lang contract because the PennDOT/Lang contract did not explicitly mention Wausau. The court concluded that, under the law of assignment, Wausau stepped into Lang's shoes *vis-a-vis* PennDOT and thus clearly presented a claim sounding in contract. Further, the court observed that the Procurement Code contained no language precluding or limiting claims based upon an assignment of rights. The court concluded that, because Wausau's claim against PennDOT sought en-

forcement of rights that were assigned and created by a contract with the Commonwealth, the Board was the proper forum to adjudicate the assignment claim. The court also concluded that, because the equitable subrogation claim asserted by Wausau also was based on the contract between Lang and PennDOT, that claim also should be heard by the Board.

In *Hunt v. Goeckel,* 713 A.2d 746 (Pa. Cmwlth.1998), employees of a joint county drug and alcohol program filed an action seeking a declaration that they were third-party beneficiaries of a personnel agreement entered into by the counties, the Department of Health, and the State Civil Service Commission, and as such, they were county employees entitled to participate in a county pension plan. This Court *sua sponte* raised the issue of whether the Board of Claims had jurisdiction over the matter. Ultimately, we held that the claims asserted against the Commonwealth were based on a contract entered into by the Commonwealth and therefore, the matter fell within the jurisdiction of the Board of Claims.[5]

More recently, in *Department of Health v. Data–Quest, Inc.,* 972 A.2d 74 (Pa.

---

5. In reaching this conclusion, we relied on our Supreme Court's decision in *Shovel Transfer and Storage, Inc. v. Simpson,* 523 Pa. 235, 565 A.2d 1153 (1989), which we quoted in *Hunt* as follows:

A 'claim ... arising from a contract' is often a dispute over the existence of the alleged contract as well as the liability flowing from it. In order for the Board of Claims to accept jurisdiction over a particular cause of action, it necessarily must determine as a factual predicate whether there is a valid contract in existence. Like any other tribunal, the Board of Claims has the implicit right to decide every question which occurs in a cause of action over which it has jurisdiction.

*Id.* at 239–40, 565 A.2d at 1155. The Court went on to state:

The mere fact that the validity of a contract may turn upon issues of statutory duty does not create a statutory right of action. Rather, the focus is upon the origin of the rights claimed. In the instant matter, Shovel's objective is to establish the contractual relationship. Shovel's right to pursue this objective derives necessarily from the rights and obligations created by the contract, not by the alleged violation of a statute by the [Pennsylvania Liquor Control Board] or the appellants. Shovel's action thus assumes the nature of a breach of contract action in which a traditional remedy for the breach, namely specific performance, is sought. The proper forum for this type of action, therefore, is the Board of Claims.

*Id.* at 241, 565 A.2d at 1156.
*Hunt,* 713 A.2d at 748.

Cmwlth.2009), we addressed the question of whether the Board has jurisdiction over quasi-contract claims against the Commonwealth that are not based on a written agreement under section 1724(a) of the Procurement Code, 62 Pa.C.S. § 1724(a). In that case, Data Quest, Inc. filed an action seeking damages from the Department of Health (Department) under promissory estoppel and quasi-contract theories for services Data Quest performed in connection with the development of a software system for the Department's Bureau of Drug and Alcohol Programs.

Like Petitioners here, the Department cited the specific language of the Procurement Code and alleged that the Board of Claims lacked subject matter jurisdiction over quasi-contract claims against the Commonwealth that are not based on a written agreement, where the Procurement Code defines a "contract" as a "type of written agreement ...," 62 Pa.C.S. § 103, and the Department had not entered into a written contract with Data Quest. Relying, *inter alia,* on *Wausau* and *Limbach Co.,* we rejected the Department's arguments:

> The Court begins its analysis by emphasizing that the Board and its predecessors have exercised jurisdiction over quasi-contract claims since 1811. *See* [*Miller v. Department of Environmental Resources,* 133 Pa.Cmwlth. 327, 578 A.2d 550 (1990) ]. **The Board was established in furtherance of a public policy extending more than 200 years ago to allow claimants who ordinarily would have been barred by sovereign immunity to have a method of redress against the Commonwealth.** *Lowry v. Commonwealth,* 365 Pa. 474, 76 A.2d 363 (1950). The Supreme Court in *Wausau* construed the Board's equity jurisdiction under the Procurement Code and expounded on its legislative scheme as follows:

> > [The legislature] recognized that claims arising from contracts involving the Commonwealth could sound in both assumpsit and equity, and expressly provided that, regardless of form, these claims should be decided by the Board of Claims. It is thus readily apparent that Pennsylvania's legislative scheme intended to vest the Board of Claims with expansive jurisdiction to decide disputes concerning contracts involving the Commonwealth....

> *Data–Quest* at 78–79, quoting *Wausau,* 581 Pa. at 393, 865 A.2d at 832–33 (emphasis added). Adopting Petitioners' view would repudiate long standing public policy to provide a method of redress to claimants who contract with the Commonwealth.

> Moreover, in *Data–Quest* we also observed that statutory provisions that decrease the jurisdiction of a court of record must be strictly construed, 1 Pa.C.S. § 1928(b)(7), and we cited the well settled principle that when the Legislature seeks to depart from salutary public policy principles, it must express its intention to do so *explicitly. Data–Quest,* 972 A.2d at 79.

Following well-reasoned case law precedent, the Court concludes that the provision "claims arising from ... [a] contract" in Section 1724(a)(1) of the Procurement Code must be construed to include claims arising from contracts implied-in-law, or quasi-contract claims. **Section 1724(a)(1) is substantively identical to the now repealed Section 4 of the Board of Claims Act,** which was construed as providing jurisdiction over quasi-contract claims. *See Wausau; Limbach.* Notwithstanding the Section 103 definition of "contract," the Court observes that Section 103 provides in its introductory clause that words in the Procurement Code may

have different meanings than those defined therein if the context clearly indicates otherwise. In *Pennsylvania Associated Builders [and Contractors, Inc. v. Department of General Services*, 593 Pa. 580, 932 A.2d 1271 (2007)] the court determined that the phrase "unless the context clearly indicates otherwise" signals the legislature's contemplation that a term defined in Section 103 may have a meaning that is different from the definition given it, thereby directing the courts to pay attention to what surrounds the term in order to determine whether the Procurement Code's definition applied.

\* \* \*

Under *Wausau* the Board's jurisdictional provisions must be construed broadly, and under Section 1702(b) of Procurement Code sovereign immunity is waived as a bar to claims brought pursuant to provisions in Chapter 17 ("Legal and Contractual Remedies"). *See* n. 3. Viewing Chapter 17's remedial provisions as a whole and having examined what surrounds the term "contract" in Chapter 17, the Court cannot accept the premise that the definition of "contract" in *Section 103* applies to Chapter 17 provisions. The definition is incompatible with the remedial provisions of

Sections 1711.1(a), 1711.2(1), 62 Pa.C.S. §§ 1711.1(a), 1711.2(1).

*Data–Quest*, 972 A.2d at 80 (emphasis added) (footnote omitted).

In addition, we note that interpreting the Procurement Code as severely restricting the Board's jurisdiction to matters involving the Commonwealth's purchase of goods or services arguably deprives all parties who enter into other types of agreements with the Commonwealth, including those who purchase goods or services *from* the Commonwealth, of a remedy in the event of a breach.[6] Our courts have long recognized the significance of sovereign immunity in determining that the legislature intended the Board to have broad jurisdiction in claims against the Commonwealth. *Lowry v. Commonwealth*, 365 Pa. 474, 76 A.2d 363 (1950) (stressing the need for those whose claims ordinarily would have been barred by the prerogative of sovereign immunity to have a method of redress against the Commonwealth); *Data–Quest.*

Our Supreme Court emphasized the importance of an available forum in *Shovel Transfer*:

Our finding that jurisdiction of this matter lies with the Board of Claims is supported by the fact that otherwise there would be no forum available to establish the fact of a valid contract

---

**6.** Our court has held that jurisdiction was properly with the Board of Claims in a broad variety of matters, including: *Caparo*, a dispute involving a contract claim against SWIF; *Brown v. Taylor*, 90 Pa.Cmwlth. 23, 494 A.2d 29 (1985), an action in assumpsit brought against a common pleas judge by a former county employee asserting breach of an employment contract; *Transamerica Insurance Co. v. Judie, Inc.*, 30 Pa.Cmwlth. 259, 373 A.2d 478 (1977), an action brought by a surety against a licensed sales agent of the Bureau of State Lotteries to recover the purchase price of stolen lottery tickets; and *United Brokers Mortgage Co. v. Fidelity Philadelphia*

*Trust Co.*, 26 Pa.Cmwlth. 260, 363 A.2d 817 (1976), where suit was commenced by a mortgage company against an agent of the Public School Employees' Retirement Board and the State Employees' Retirement Board seeking damages for an alleged unreasonable refusal to assign a contract.

Historically, the Board also has exercised concurrent jurisdiction over counterclaims. *See* e.g., *Pennsylvania Liquor Control Board v. Rapistan, Inc.*, 472 Pa. 36, 371 A.2d 178 (1976); *Tower Associates v. Pennsylvania Department of General Services*, 687 A.2d 1225 (Pa.Cmwlth.1997).

against the Commonwealth. Since at common law sovereign immunity barred a claimant from asserting a claim against the Commonwealth based upon a contract, 1 Pa.C.S. § 2310, no other forum would be available to test the validity of an alleged contract if it did not fit within the exception of the statute provided to exempt the immunity. Thus, any time the Commonwealth challenged the existence of the underlying contract, the claimant would have no forum to establish its legitimacy. The statute creating the Board of Claims would thus be construed as allowing a claimant to sue only if the Commonwealth conceded the existence of a valid contract in the first instance. We find no basis for such a limited construction.

523 Pa. at 240–41, 565 A.2d at 1155–56.

Based on the foregoing, specifically, in light of well-settled precedent and the lack of clear legislative intent, we agree that the provisions of the Procurement Code have not altered or limited the exclusive jurisdiction of the Board of Claims over this matter.[7]

Accordingly, we sustain SWIF's preliminary objection and transfer this matter to the Board of Claims.[8]

---

**7.** The dissent suggests that the majority's result is inconsistent with the Supreme Court's decision in *Fletcher v. Pennsylvania Property and Casualty Insurance Guaranty Association*, 603 Pa. 452, 985 A.2d 678 (2009). The issue in *Fletcher* was whether the Commonwealth Court retained jurisdiction over claims brought against the "MCARE Fund" premised on the fund's failure to pay its share of liability. The "MCARE Fund" was the successor in interest to the "CAT Fund" after the Health Care Services Malpractice Act of October 15, 1975, P.L. 390, 40 P.S. §§ 1301.101–1301.1006 (Malpractice Act) that created the Medical Professional Liability Catastrophe Loss Fund (CAT Fund) was replaced with the Medical Care Availability and Reduction of Error Act (MCARE Act), Act of March 20, 2002, P.L. 154, *as amended*, 40 P.S. §§ 1303.101–1303.910. The MCARE Act established the MCARE Fund as a special fund within the state treasury to be administered by the Insurance Department. *Fletcher*, 603 Pa. 452, 473, 985 A.2d 678, 691. In determining whether decisions relating to the predecessor CAT Fund applied to continue this Court's original jurisdiction over such controversies, the Supreme Court inquired whether the differences between the Malpractice Act and the MCARE Act compelled a different result. MCARE's sole argument on appeal was that, because the MCARE Act placed the MCARE Fund within the Insurance Department, there is now an administrative appeals process available to parties that was not available under the Malpractice Act. Among other things, the court in *Fletcher* observed that there were no statutory provisions within the MCARE Act affording a remedy, and therefore it rejected the contention that Fletcher was required to exhaust administrative remedies. The court also emphasized, at length, the absence of express statutory language indicating a legislative intent to effectuate a change in jurisdiction. ("We have explained that the legislative intent to effectuate a drastic change in the law is not to be inferred by mere omission and implication." *Id.* 603 Pa. at 476, 985 A.2d at 693.) Concluding its analysis, the court stated that the statutory changes were too insignificant to compel us to abandon precedent established under the Malpractice Act.

Unlike the MCARE Fund, SWIF is a state agency. *State Workmen's Insurance Fund v. Caparo Real Estate Inc.*, 160 Pa.Cmwlth. 581, 635 A.2d 705 (1993) (holding that the Board of Claims has jurisdiction over contract claims against SWIF, which is a Commonwealth agency). Thus, neither the decision in *Fletcher* nor the relocation of statutory provisions governing the Board of Claims' jurisdiction in this case compels a departure from 200 years of precedent.

**8.** Pa. R.C.P. No. 213(f) provides:

When an action is commenced in a court which has no jurisdiction over the subject matter of the action it shall not be dismissed if there is another court of appropriate jurisdiction within the Commonwealth in which the action could originally have been brought but the court shall transfer the action at the cost of the plaintiff to the court of appropriate jurisdiction. It shall

## ORDER

AND NOW, this 19th day of January, 2012, the preliminary objection of the State Workers' Insurance Fund of the Commonwealth of Pennsylvania and the Department of Labor and Industry of the Commonwealth of Pennsylvania is hereby sustained, and this matter is transferred to the Board of Claims.

## DISSENTING OPINION BY Judge PELLEGRINI.

Because the majority opinion is in conflict with Section 1724 of the Procurement Code and inconsistent with our Supreme Court's decision in *Fletcher v. Pennsylvania Property and Casualty Insurance Guaranty Association*, 603 Pa. 452, 985 A.2d 678 (2009), I respectfully dissent.

Petitioners filed an action seeking a declaration to determine coverage under a policy that they have with the State Workers' Insurance Fund (SWIF) for workers' compensation as well as for defense costs and indemnity paid. The issue in this case is whether the Board of Claims has jurisdiction over those types of claims.

The majority holds that under Section 1724(a)(1) of the Procurement Code,[1] the Board has "exclusive jurisdiction to arbitrate claims arising from ... a contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies)"

to review coverage disputes involving SWIF workers' compensation policies. 62 Pa.C.S. § 1724(a)(1). In arriving at that conclusion, the majority, relying on cases largely decided before the Board of Claims' jurisdiction was revised in 2002 when it was placed in the Procurement Code, finds that SWIF polices are contracts, and Pennsylvania courts have broadly construed that provision as conferring jurisdiction of the Board of Claims to all contract disputes. *See, e.g., Shovel Transfer and Storage, Inc. v. Simpson*, 523 Pa. 235, 565 A.2d 1153 (1989). I dissent for the following reasons.

First, the presumption that the Board of Claims has exclusive jurisdiction over contract claims is no longer valid. Prior to 2002, when its jurisdiction was placed in the Procurement Code, the Board's jurisdiction resided in former Section 4 of the Board of Claims Act, Act of May 20, 1937, P.L. 728, *as amended*, 72 P.S. § 4651–4, *repealed by* 62 Pa.C.S. § 1724. Section 4 provided:

> The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more. The board shall also have exclusive jurisdiction to hear and determine those claims authorized by the act of March 30, 1811 (P.L. 145, Ch. XCIX), entitled "An act to amend and

---

be the duty of the prothonotary or clerk of the court in which the action is commenced to transfer the record together with a certified copy of the docket entries to the prothonotary or clerk of the court to which the action is transferred. "[T]he Board of Claims is considered a judicial tribunal," *Employers Insurance of Wausau*, 581 Pa. 381, 389, 865 A.2d 825, 830 (2005), and, therefore, transfer is warranted pursuant to Rule 213(f).

1. Added by Section 12.2 of the Act of December 3, 2002, P.L. 1147 (2002 Act).

   Section 21(a) of the 2002 Act repealed Section 4 of the Act of May 20, 1937, P.L. 728, *as amended, formerly* 72 P.S. § 4651–4 ("Board of Claims Act"), which, in relevant part, provided that "[t]he Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth...."

consolidate the several acts relating to the settlement of the public accounts and the payment of the public monies, and for other purposes," and continued "by Article X, act of April 9, 1929 (P.L. 343, No. 176), known as The Fiscal Code," wherein the Auditor General and State Treasurer were granted the power to adjust and settle certain claims against the Commonwealth.

Board of Claims Act, Act of May 20, 1937, P.L. 728, *as amended,* formerly 72 P.S. § 4651–4, *repealed by* Section 21 of the Act of December 3, 2002, P.L. 1147.

However, when provisions regarding the Board of Claims were put into Chapter 17 of the Procurement Code, the old Board of Claims Act was not merely relocated, but the jurisdiction of the Board of Claims was changed, limited and made non-exclusive. Section 1724 now provides:

§ 1724.   Jurisdiction

(a) Exclusive jurisdiction.—The board shall have exclusive jurisdiction to arbitrate claims arising from all of the following:

*(1) A contract entered into by a Commonwealth agency in accordance with this part and filed with the board in accordance with section 1712.1 (relating to contract controversies).*

(2) A written agreement executed by a Commonwealth agency and the Office of Attorney General in which the parties expressly agree to utilize the board to arbitrate disputes arising from the agreement.

(3) Unless otherwise provided by law, a contract entered into by a Commonwealth agency involving real prop-

erty interests in which the Commonwealth agency is the respondent.

(b) Concurrent jurisdiction.—The board shall have concurrent jurisdiction to arbitrate claims arising from all of the following:

(1) A contract entered into by a Commonwealth agency in accordance with this part in which the Commonwealth agency is the claimant.

(2) Unless otherwise provided by law, a contract entered into by a Commonwealth agency involving real property interests in which the Commonwealth agency is the claimant.

(c) Limitations.—*The board shall have no power and exercise no jurisdiction over a claim asserted under subsection (a)(1) unless it is filed with the board in accordance with section 1712.1.* The board shall have no power and exercise no jurisdiction over a claim asserted against a Commonwealth agency under subsection (a)(2) or (3) unless the claim was filed with the board within six months after it accrued. The board shall have no power and exercise no jurisdiction over claims for payment or damages to providers of medical assistance services arising out of the operation of the medical assistance program established by the act of June 13, 1967 (P.L. 31, No. 21), known as the Public Welfare Code.

*(d) Nonmonetary relief.—Nothing in this section shall preclude a party from seeking nonmonetary relief in another forum as provided by law.*

62 Pa.C.S. § 1724. (Emphasis added.)[2]

As can be seen under Section 1724(a)(1), the Board of Claims' jurisdiction only in-

---

**2.** The majority relies heavily on our decision in *Department of Health v. Data–Quest, Inc.,* 972 A.2d 74 (Pa.Cmwlth.2009). That case involved the Department of Health's (DOH) solicitation of bids to develop a software system. In 2003, DOH personnel, with apparent authority, selected Data–Quest's software over other bidders' software and communicated to

volves claims involving contracts involving goods or services procured or sought to be procured under the Procurement Code. Moreover, even if the contract was entered into under the Procurement Code, the Board of Claims no longer has exclusive jurisdiction because Section 1724(d) provides that a party is not precluded from bringing an action in another forum if nonmonetary relief is sought. *Scientific Games International v. Department of Revenue*, 34 A.3d 307 (Pa.Cmwlth.2011). In this case, if Petitioners had not sought reimbursement for defense costs and indemnity paid, then there would be no question that we would have jurisdiction to entertain this claim.

Instead of following the plain language of Section 1724 regarding the Board of Claims' jurisdiction, the majority states that there should be no "departure from 200 years of precedent" of the strong presumption of the exclusivity of the Board of Claims' jurisdiction regarding contracts. However, changes made by the General Assembly by enacting a new statute or amending an old one always trump precedent interpreting previous statutes involving the same subject matter, no matter how old, how many or how well-settled the precedent may be.

Second, the Board of Claims does not have jurisdiction because SWIF policies of insurance are not covered by the Procurement Code. The Procurement Code provides a comprehensive method for Commonwealth agencies for procurement, which is defined as the "[b]uying, purchasing, renting, leasing, licensing or otherwise acquiring any supplies, services or construction. The term also includes all functions that pertain to the obtaining of any supply, service or construction, including description of requirements, selection and solicitation of sources, preparation and award of contract and all phases of contract administration." 62 Pa.C.S. § 103. Section 511 sets forth the methods by which contracts can be awarded under the Procurement Code. It provides:

All Commonwealth agency contracts shall be awarded by competitive sealed bidding under section 512 (relating to competitive sealed bidding) except as provided in:

Section 512.1 (relating to competitive electronic auction bidding).

Section 513 (relating to competitive sealed proposals).

Section 514 (relating to small procurements).

Section 515 (relating to sole source procurement).

---

Data–Quest its intention to acquire its software. Until 2007, Data–Quest worked closely with DOH and the Bureau to customize its software for DOH's purposes, but in 2007, DOH stated that it would not purchase Data–Quest's software. Data–Quest demanded payment for the costs of its services between 2003 and 2006, but DOH refused. Data–Quest filed a claim before the Board of Claims for damages under promissory estoppel and quasi-contract theories for services performed in regard to its development of a software system. The Board of Claims denied the claim finding that it did not have jurisdiction over the claim unless it was based on a written agreement. *See* Section 1724(a)(1) of the Commonwealth Procurement Code, 62

Pa.C.S. § 1724(a)(1). We reversed, holding that claims involving a contract that was to have been entered under the Procurement Code were within the Board of Claims' jurisdiction.

The obvious difference between *Data–Quest* and this case is that *Data–Quest* involves a procurement contract under the Procurement Code and this case does not. To the extent the majority relies on *dicta* in *Data–Quest* that the jurisdiction of the Board of Claims is substantially identical under the Procurement Code as under the old Board of Claims Act, that statement simply does not hold up when a comparison is made between those two Acts as I have done above.

Section 516 (relating to emergency procurement).

Section 517 (relating to multiple awards).

Section 518 (relating to competitive selection procedures for certain services).

Section 519 (relating to selection procedure for insurance and notary bonds).

62 Pa.C.S. § 511.

Chapter 17 of the Procurement Code, in which the Board of Claims' jurisdiction is set forth, is titled "Legal and Contractual Remedies." *See* 62 Pa.C.S. §§ 1701–1751. It deals with how claims are processed, how to challenge matters arising from the way the contract has been bid or administered under Section 511, and other sections referred to in that chapter. For example, Section 1711.1 addresses bid protests and Section 1711.2 addresses remedies where solicitations or awards are contrary to law. The provision of the chapter which sets forth the Board of Claims' jurisdiction is Section 1724(a), which limits its exclusive jurisdiction to only those claims that were first filed with the contracting officer under Section 1712.1. If the controversy has not been filed first with the contract officer under that provision, Section 1724(c) divests the Board of Claims' jurisdiction to hear the matter. Section 1712.1 provides:

§ 1712.1. Contract controversies

(a) Right to claim.—A **contractor** may file a claim with the contracting officer in writing for controversies arising from a contract entered into by the Commonwealth.

(b) Filing of claim.—A claim shall be filed with the contracting officer within six months of the date it accrues. If a contractor fails to file a claim or files an untimely claim, the contractor is deemed to have waived its right to assert a claim in any forum. Untimely filed claims shall be disregarded by the contracting officer.

(c) Contents of claim.—A claim shall state all grounds upon which the contractor asserts a controversy exists.

(d) Determination.—The contracting officer shall review a claim and issue a final determination in writing regarding the claim within 120 days of the receipt of the claim unless extended by consent of the contracting officer and the contractor. If the contracting officer fails to issue a final determination within the 120 days unless extended by consent of the parties, the claim shall be deemed denied. The determination of the contracting officer shall be the final order of the purchasing agency.

(e) Statement of claim.—Within 15 days of the mailing date of a final determination denying a claim or within 135 days of filing a claim if no extension is agreed to by the parties, whichever occurs first, the contractor may file a statement of claim with the board.

(f) Applicability.—The provisions of 2 Pa.C.S. (relating to administrative law and procedure) shall not apply to this section.

62 Pa.C.S. § 1712.1. (Emphasis added.)

Section 1712.1 only pertains to disputes involving contracts under the Procurement Code. SWIF's selling of workers' compensation insurance does not fit that scheme at all because the Procurement Code is for what its title states—it involves procuring of goods or services, not the selling of anything, especially not the selling of insurance coverage by SWIF.

SWIF is a state-created fund established to provide workers' compensation insurance to Pennsylvania employers. Section 1504 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, added by the act of June 24, 1996, P.L.

350, 77 P.S. § 2604. It is controlled by a Board consisting of the Secretary of Labor and Industry, the Insurance Commissioner and the State Treasurer. Section 1502 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, added by the act of June 24, 1996, P.L. 350, 77 P.S. § 2602. SWIF generally must follow the same rules and requirements private workers' compensation insurers must follow. An employer who desires to obtain coverage is called a "subscriber." Once it makes an application with the requisite information about the business and its employees, then:

> Upon submission of the application, the board shall make such investigations as it may deem necessary and, within thirty (30) days after the application, shall issue a certificate showing the classification or group in which such applicant is entitled to be placed and the amount of premium payable by such applicant for the year for which insurance is sought. No insurance shall be issued for a longer period than a single year.

Section 1516 of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, added by the act of June 24, 1996, P.L. 350, 77 P.S. § 2616.

Aside from not being a procurement contract, because a Commonwealth agency is not procuring goods or services, the method by which a subscriber obtains insurance has nothing to do with the manner in which contracts are bid, issued or administered under the Procurement Code, and the Section 1712.1 scheme simply does not apply to how SWIF policies are issued or administered. Because Section 1712.1 does not apply, the Board of Claims has no jurisdiction over coverage disputes involving SWIF policies.

Third, unlike the majority, sovereign immunity simply does not apply to contracts. Recently, our Supreme Court in *Meyer v.*

*Community College of Beaver County,* 606 Pa. 539, 544–45, 2 A.3d 499, 502–503 (2010) stated:

> [T]he language of the statute conferring governmental immunity, and of that implementing the exceptions, pertains to conduct causing "injury to a person or property." 42 Pa.C.S. §§ 8541, 8542. The Commonwealth Court previously has recognized that these terms reflect the main policy consideration historically underlying tort law, whereas, the central focus of contract law is the protection of bargained-for expectations. See *Hazleton Area Sch. Dist. v. Bosak,* 671 A.2d 277, 282–83 (Pa.Cmwlth.1996).

> In line with the extant understanding of the Political Subdivision Tort Claims Act, we believe the Legislature centered the immunity there conferred on "injury to a person or property" as a reflection of traditional tort jurisprudence. Accord supra note 4 (citing cases reflecting the long-prevailing understanding concerning the Tort Claims Act's reach). We also agree with Appellants that nothing about the recodification of the immunity statute within the Judicial Code altered this substantive intent. In response to the College's contention that the title changed, we observe that the central conferral of immunity was captioned "Governmental immunity generally" from its inception. See Act of Nov. 26, 1978, P.L. 1399, No. 330, § 201. Furthermore, we credit Appellants' position that, by suggesting that the Tort Claims Act impairs the enforceability of contractual relationships with the government, the Commonwealth Court's holding may have unintended effects which are best to be avoided.

While that case involved the Political Subdivision Tort Claims Act, the same concepts are equally applicable under the Sovereign Immunity Act. Accordingly, rather

than being devoid of a remedy, SWIF subscribers could bring a declaratory judgment action to determine insurance coverage in court rather than having that determined by the Board of Claims.

Fourth, to prescribe any other remedy would be inconsistent with our Supreme Court's decision in *Fletcher v. Pennsylvania Property and Casualty Insurance Guaranty Association*, 603 Pa. 452, 985 A.2d 678 (2009). That case, like this appeal, involved whether a state fund—the MCARE Fund—was required to provide coverage to a subscriber to the fund. The MCARE Fund is a statutory excess carrier that provides excess medical malpractice insurance coverage to the extent a health care provider's liability exceeds its basic coverage in effect at the time of an occurrence. The issue in *Fletcher* was whether a declaratory judgment action to determine coverage could be brought in this court's original jurisdiction or whether an administrative appeal have to be taken to the Insurance Department. Our Supreme Court held that Fletcher did not have to seek an adjudication from the Insurance Department to determine the extent of coverage finding that this Court had original jurisdiction to hear an action in which Fletcher sought a declaration regarding the MCARE Fund's responsibility for excess liability and delay damages.

I can see no difference between the MCARE Fund and SWIF because both provide insurance coverage and both are state funds. If we hold that SWIF disputes go to the Board of Claims, then MCARE disputes would have to as well, which is inconsistent with our Supreme Court's decision in *Fletcher*. It also belies the majority's argument that somehow SWIF subscribers would have no remedy in the event of a breach of contract.

For the foregoing reasons, I would overrule SWIF's preliminary objection and hold that this case can be heard in our original jurisdiction.

President Judge LEADBETTER and Judge BROBSON join in this dissenting opinion.