# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Empire Roofing & More, LLC, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 353 M.D. 2022 |
| | : | Argued: February 6, 2024 |
| Department of Labor & Industry, | : | |
| State Workers' Insurance Fund; | : | |
| State Workers' Insurance Board; and | : | |
| Nancy Walker, Secretary of the | : | |
| Pennsylvania Department of Labor & | : | |
| Industry (in her official capacity), | : | |
| Respondents | : | |

**BEFORE:**   **HONORABLE RENÉE COHN JUBELIRER,** President Judge
        **HONORABLE ANNE E. COVEY,** Judge
        **HONORABLE MARY HANNAH LEAVITT,** Senior Judge

**OPINION BY**
**PRESIDENT JUDGE COHN JUBELIRER**        **FILED: March 7, 2024**

Before the Court are the preliminary objections (POs) of the Department of Labor & Industry, the State Workers' Insurance Fund (Fund),[1] the State Workers' Insurance Board (Board),[2] and Secretary of the Pennsylvania Department of Labor

---

[1] Employers pay into the Fund for the purposes of, *inter alia*, providing insurance against liability under the Workers' Compensation Act (WC Act), Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.4, 2501-2710, and to ensure covered employers can provide compensation under the WC Act. Section 1504 of the WC Act, added by Section 29 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 2604.

[2] The Fund is administered by the Board. Section 1504 of the WC Act, 77 P.S. § 2604. Among the responsibilities of the Board is to "determine the amount of premiums which the subscribers to the [F]und shall pay and [] fix the premiums for insurance in accordance with the nature of their business and of the various employments of their employes, and the probable risk of injury to their employes." Section 1507 of the WC Act, added by Section 29 of the Act of June 24, 1996, P.L. 350, 77 P.S. § 2607.

& Industry Nancy Walker in her official capacity (collectively, Respondents), to the Amended Petition for Review (Amended Petition) filed by Empire Roofing & More, LLC (Empire) in our original jurisdiction seeking review and reversal of two Final Audit Details issued by the Fund. The parties having briefed their respective positions, the POs are ripe for our disposition.

## I.  EMPIRE'S PETITION

Empire's Amended Petition[3] alleges as follows.[4] "The present dispute arises from [a workers' compensation and employer liability insurance policy (Policy)] issued to [Empire] by the [Fund] . . . ." (Amended Petition ¶ 9; Ex. C.) In December 2019, the Fund informed Empire of its intent to conduct an audit of Empire's books and records from January 15, 2019, through January 15, 2020. In the course of that audit, the Fund sent "Independent Contractor Questionnaires" concerning three of Empire's subcontracting entities, Neo Repairs, Windsor Mills Construction, and TDS Contracting (Entities). (*Id.* ¶ 11.) The Fund then conducted a second audit for the period of January 15, 2020, through September 1, 2020. (*Id.* ¶ 12.)

In May 2020, the Fund sent Empire a first "Final Audit Detail" concerning the 2019-20 policy period. (*Id.* ¶ 14; Ex. A.) The Fund took the position that the Entities were employees and not independent contractors, as Empire had said. (*Id.*

---

[3] Empire filed its original petition for review on June 24, 2022, to which Respondents filed POs on July 22, 2022. After Respondents filed their brief in support of the POs, Empire sought leave to file the Amended Petition on May 17, 2023, to which Respondents filed no response. On June 13, 2023, we granted Empire leave to file its Amended Petition, and Respondents filed the present POs thereto on July 3, 2023.

[4] "In ruling on preliminary objections, we accept as true all well-pleaded material allegations in [a] petition for review . . . and any reasonable inferences that we may draw from the averments. . . . The Court, however, is not bound by legal conclusions, unwarranted inferences from facts, argumentative allegations, or expressions of opinion encompassed in [a] petition for review." *Thomas v. Corbett*, 90 A.3d 789, 794 (Pa. Cmwlth. 2014) (internal citations omitted).

¶¶ 15, 50.)  As a result of the Fund's reclassification of the Entities to employees, the Fund determined that Empire owed it an additional $134,669 in increased premiums.  (*Id.* ¶ 17.)

On August 12, 2020, Empire's insurance broker (Broker) corresponded with a Fund employee about the audit.  (*Id.* ¶ 16.)  The Broker explained he was "trying to . . . get any premium currently owed due to a clerical error rectified[.]"  (*Id.*; Ex. G.)  The next day, the employee agreed to put the audit on hold pending receipt of additional information.  (*Id.*)  The two continued to correspond about the audit over the next few months.  (*Id.*)  The final email appended to the Amended Petition is dated March 5, 2021, in which the Fund employee explained, "I'm sorry, I wish these were the documents I needed, I would love to be able to help.[]  Only, they are not.[] . . . Let me know[] if there is anything else I can look at for you.[]"  (*Id.*)

With respect to the second audit, the Fund sent another "Final Audit Detail" on January 15, 2021, in which the Fund determined that Empire owed an additional $48,921 in premiums for that policy period.  (*Id.* ¶ 18; Ex. B.)  In the remainder of the Amended Petition, Empire argues that each of the Entities is an independent contractor and not an employee, providing its rationale.  (*Id.* ¶¶ 22, 24-49.)  It further asserts that each of the Entities is Amish, so accordingly, each is exempt from the requirements of the Workers' Compensation Act (WC Act), pursuant to Section 304.2 of the WC Act, 77 P.S. § 484;[5] therefore, Empire argues Respondents erred in including those Entities as employees in the Final Audit Details.  (*Id.* ¶¶ 50-54.)

Empire requests the following declaratory and injunctive relief against Respondents.  First, it seeks a declaration that each of the Entities is an independent contractor and not an employee.  (*Id.*, Wherefore Clause, ¶¶ 1-3.)  Next, it seeks a

---

[5] Section 304.2 was added by Section 1 of the Act of November 26, 1978, P.L. 1422.

declaration that Respondents erred in their calculation of the premiums owed to the Fund. (*Id.* ¶ 4.) Further, it seeks to have the Court enjoin Respondents from initiating collections proceedings against Empire based on the Policy. (*Id.* ¶ 5.) And finally, it seeks an order "directing Respondents to reverse the imposition of $134,669 in premium[s] against [Empire], therefore causing [Empire's] Worker's [sic] Compensation Premium account to be reduced to zero dollars[.]" (*Id.* ¶ 6.)

## II. RESPONDENTS' POs

In their first PO, Respondents seek the dismissal of the Amended Petition based on lack of subject matter jurisdiction. (POs ¶ 26.) *See* Pennsylvania Rule of Civil Procedure 1028(a)(1), Pa.R.Civ.P. 1028(a)(1) (authorizing, *inter alia*, POs challenging "jurisdiction over the subject matter of the action . . ."). Respondents point out that one exception to this Court's jurisdiction involves actions brought under what was known as the Board of Claims Act.[6] (PO ¶ 28 (quoting Section 761(a)(1)(iv) of the Judicial Code, 42 Pa.C.S. § 761(a)(1)(iv)).) Because the Amended Petition concerns a contract to which a Commonwealth agency is a party, Respondents argue this Court lacks jurisdiction, as the Board of Claims has jurisdiction. (POs ¶¶ 29, 37.) Moreover, Respondents assert that because Empire failed to "file[] a claim with Respondents' contracting officer to appeal [the Fund's] audit determinations . . . stating all grounds upon which Empire asserts a controversy arises," there was no final determination even capable of being appealed to the Board of Claims. (*Id.* ¶¶ 30-31.) Respondents' other two POs assert failure to exercise

---

[6] Act of May 20, 1937, P.L. 728, *as amended*, formerly 72 P.S. §§ 4651-1 – 4651-4, repealed by Sections 21(a)(2), 22(1)(iv) of the Act of December 3, 2002, P.L. 1147. The Board of Claims Act was replaced by amendments to the Commonwealth Procurement Code, 62 Pa.C.S. §§ 101-2311.

statutory remedies pursuant to Rule 1028(a)(7), Pa.R.Civ.P. 1028(a)(7), and a demurrer pursuant to Rule 1028(a)(4), Pa.R.Civ.P. 1028(a)(4). (*Id.* ¶¶ 39-52; 53-76.)

## III.  PARTIES' ARGUMENTS

### A. Respondents

In their brief, Respondents first emphasize that the Board of Claims has "exclusive jurisdiction to arbitrate claims arising from . . . [a] contract entered into by a Commonwealth agency . . . ."  Section 1724(a)(1) of the Commonwealth Procurement Code (Procurement Code), 62 Pa.C.S. § 1724(a)(1).  They assert that because Empire did not arbitrate its claims with the Board of Claims in the first instance, this Court lacks jurisdiction.  They label this a failure to exhaust statutory remedies, citing *Buchart Horn, Inc. v. Department of Transportation* for the proposition that failure to exhaust statutory remedies with respect to the Procurement Code is a jurisdictional issue.  1 A.3d 960, 963 n.5 (Pa. Cmwlth. 2010).  They further emphasize that the Final Audit Details reflect "determinations regarding the additional premium due in accordance with the terms of [the] insurance contract . . . and Empire **failed to appeal** these audit determinations to [the Fund's] contracting officer."  (Respondents' Brief (Br.) at 12 (emphasis in original).)  Because Empire did not file an administrative claim within six months of the claim's accrual pursuant to Section 1712.1(b) of the Procurement Code, 62 Pa.C.S. § 1712.1(b), they argue this Court lacks subject matter jurisdiction.

In the alternative, Respondents suggest that if the Court were to find the email between Empire's Broker and the Fund employee to amount to notice of claim under the Procurement Code, Empire would still not prevail.  That is because pursuant to

Section 1712.1(d) of the Procurement Code, the Fund's contracting officer had 120 days from the filing of the claim to respond. Because the Fund issued no final determination, Empire had 135 days from the filing of its claim to go to the Board of Claims pursuant to Section 1712.1(e). Respondents assert that period expired on July 17, 2021.

### B. Empire

Empire counters that this Court has subject matter jurisdiction over this declaratory judgment action. In its view, this action falls squarely within our original subject matter jurisdiction over "all civil actions . . . [a]gainst the Commonwealth government," 42 Pa.C.S. § 761(a)(1), because it does not "'aris[e] from . . . a contract entered into by a Commonwealth agency[,]'" 62 Pa.C.S. § 1724(a). (Empire's Br. at 8.) This is so because the question whether a given entity amounts to an employee or independent contractor "stands apart from any contractual agreements with a Commonwealth agency . . . ." (*Id.* at 7-8.) Further, because this action does not arise from a contract, Empire asserts that any exhaustion requirement does not apply. It also points to the Supreme Court's decision in *Fletcher v. Pennsylvania Property & Casualty Insurance Guaranty Association*, 985 A.2d 678, 692 (Pa. 2009), for the proposition that exhaustion of statutory remedies is not necessary where "the administrative review process has nothing to contribute to the decision or is not capable of providing the relief sought." (Empire's Br. at 8-9 (quoting *Fletcher*, 985 A.2d at 692).) It seeks to distinguish *Hanover Insurance Company v. State Workers' Insurance Fund*, 35 A.3d 849 (Pa. Cmwlth. 2012), by noting that here, Empire is not asserting a breach of contract claim or seeking interpretation of a contract, but rather is seeking a declaration that certain entities were independent contractors, "which

exists separate and apart from any contract with the Commonwealth." (Empire's Br. at 9.)  It concludes that even if the Board of Claims did have exclusive jurisdiction, the emails attached to the Amended Petition suffice to show that the contracting officer received notice.  (*Id.* at 10.)

## IV.    DISCUSSION

Because it is dispositive and fundamental, we first address whether this Court lacks subject matter jurisdiction.  Whether a court has subject matter jurisdiction "inquires into the competency of the court to determine controversies of the general class to which the case presented for consideration belongs." *Domus, Inc. v. Signature Bldg. Sys. of Pa., LLC*, 252 A.3d 628, 636 (Pa. 2021) (quoting *Assouline v. Reynolds*, 219 A.3d 1131, 1137 (Pa. 2019)).  The class of cases a given tribunal may hear—in other words, its legal authority to adjudicate a given controversy— derives from "constitutional provisions or from statutory provisions . . . to establish courts and provide for their jurisdiction."  Restatement (Second) of Judgments § 1 cmt. a (Am. Law. Inst. 1982).  Indeed, our Supreme Court has made clear that our subject matter jurisdiction "is conferred by the Commonwealth's Constitution and laws." *Heath v. Workers' Comp. Appeal Bd. (Pa. Bd. of Prob. & Parole)*, 860 A.2d 25, 29 (Pa. 2004).  In determining whether we have subject matter jurisdiction, we ask "whether [we could] enter upon the inquiry, not whether [we] might ultimately decide that [we were] unable to grant the relief sought in the particular case." *Id.* Because subject matter jurisdiction goes to the very essence of a court's authority to adjudicate a case, the issue of subject matter jurisdiction bears two exceptional features:  no party may waive it, and the court may raise it sua sponte. *Domus*, 252 A.3d at 636.  Given the gravity of the consequences flowing from a determination a

court lacks subject matter jurisdiction, courts must address the issue with special care.

We first turn, as we must, to the Constitution, and necessarily, then, to the statutes that define our subject matter jurisdiction. *Heath*, 860 A.2d at 29. This Court's subject matter jurisdiction was conferred in the first instance by article V, section 4 of the Pennsylvania Constitution, which provides that "[t]he Commonwealth Court shall . . . have such jurisdiction as shall be provided by law." PA. CONST. art. V, § 4. Consistent with that constitutional mandate, the General Assembly enacted Sections 761 through 763 of the Judicial Code to provide for this Court's original and appellate jurisdiction. 42 Pa.C.S. §§ 761-763. At issue here is our original jurisdiction, and Section 761(a)(1) provides that our original jurisdiction extends to "all civil actions or proceedings . . . [a]gainst the Commonwealth government . . . ." 42 Pa.C.S. § 761(a)(1). However, the General Assembly has enacted five specific exceptions to that broad grant of authority. Relevant here, it provided that this Court does not, sitting in its original jurisdiction, have subject matter jurisdiction over "actions or proceedings conducted pursuant to the act of May 20, 1937 (P.L. 728, No. 193), referred to as the Board of Claims Act[.]" 42 Pa.C.S. § 761(a)(1)(iv) (Board of Claims Exception). In other words, cases that belong first before the Board of Claims are not among the "general class" of cases this Court is authorized to hear in its original jurisdiction. *Domus*, 252 A.3d at 636.[7]

---

[7] Though it may not hear cases in its **original** jurisdiction that fall within the Board of Claims' jurisdiction, this Court may review final orders of the Board of Claims in its **appellate** jurisdiction. *See* 42 Pa.C.S. § 763(a)(1) ("Commonwealth Court shall have exclusive jurisdiction of appeals from final orders of[, *inter alia*,] the Board of Claims . . . ."). *See also, e.g.*, *Buchart Horn*, 1 A.3d at 961 (reviewing an order of the Board of Claims).

Section 761, originally enacted in 1976, has remained unchanged since 1982. The Board of Claims Exception was enacted in 1978,[8] and in 1982,[9] the Board of Claims Exception moved to its current location at subsection (a)(1)(iv) of Section 761. In 2002, the General Assembly repealed the Board of Claims Act and replaced it with amendments to the Procurement Code. Prior to the repeal of the Board of Claims Act, the jurisdiction of the Board of Claims was set forth in Section 4 of the Board of Claims Act: "The Board of Claims shall have exclusive jurisdiction to hear and determine all claims against the Commonwealth arising from contracts hereafter entered into with the Commonwealth, where the amount in controversy amounts to $300.00 or more." *Formerly* 72 P.S. § 4651-4. Notably, the General Assembly did **not** amend Section 761, defining our original jurisdiction, after repealing the Board of Claims Act; Section 761's statutory text continues to bear reference to the now-defunct Board of Claims Act.

Therefore, we must consider the effect of that repeal, if any, on our subject matter jurisdiction. Section 1937(a) of the Statutory Construction Act of 1972 provides the dispositive rule on that question:

> A reference in a statute to a statute or to a regulation issued by a public body or public officer includes the statute or regulation with all amendments and supplements thereto and any new statute or regulation substituted for such statute or regulation, as in force at the time of application of the provision of the statute in which such reference is made, unless the specific language or the context of the reference in the provision clearly includes only the statute or regulation as in force on the effective date of the statute in which such reference is made.

---

[8] Section 2 of the Act of September 28, 1978, P.L. 788. At that time, the Board of Claims Exception was found at 42 Pa.C.S. § 761(a)(1)(iii).

[9] Section 201 of the Act of December 20, 1982, P.L. 1409.

1 Pa.C.S. § 1937(a).[10]  *See Delmarva Power & Light Co. v. Commonwealth*, 870 A.2d 901, 909 (Pa. 2005) ("[A] reference to a repealed statute shall be interpreted as referring to a new statute replacing repealed statute unless statute indicates otherwise.").  *See also Charter Hosp. of Bucks Cnty., Pa., Inc. v. Dep't of Health*, 534 A.2d 1125, 1129 (Pa. Cmwlth. 1987) (applying amendment of federal statute to application of referencing statute enacted prior to the amendment).  Therefore, we must read Section 761 as now substituting Section 1724 of the Procurement Code for its original reference to the Board of Claims Act.[11]

We are not the first to consider the effect of the Procurement Code on our jurisdiction, or the Board of Claim's jurisdiction, and we believe this case is controlled by *Hanover Insurance*.  There, an en banc panel of this Court was called upon to consider whether a petitioner's declaratory judgment action against the Fund seeking a declaration of its rights under an insurance policy belonged first with the Board of Claims.  *Hanover Ins.*, 35 A.3d at 850.  The underlying dispute in *Hanover Insurance* related to the Fund's refusal to undertake the defense and indemnity of an employer who had insurance through the Fund, and notably, it was not the employer

_____

[10] This rule of construction "appl[ies] to every statute finally enacted on or after July 1, 1971."  1 Pa.C.S. § 1937(b).  As discussed above, the Board of Claims Exception was first enacted in 1978.

[11] Interestingly, Section 1937's rule abrogated the common law rule regarding specific references in statutes.

> If a statute specifically adopts a former statute or particular provisions of a former statute by reference to its title or otherwise, such statute or particular provisions thereof become a part of the adopting statute as though written therein, and are enforced by virtue of the adopting act; but it does not include any subsequent amendment or modification of the prior statute or its particular provisions, unless expressly so declared or clearly implied.

*Appeal of Free*, 151 A. 583, 584 (Pa. 1930) (citation and quotation marks omitted).  *See also* 2B SUTHERLAND STATUTES AND STATUTORY CONSTRUCTION § 51:7 (7th ed. 2023) (explaining common law distinction between general and specific references).

10

that brought the claim, but the insurance company who would be liable if the Fund did not contribute.

We began by turning to the Procurement Code's jurisdictional section, which provides that the Board of Claims has "'exclusive jurisdiction to arbitrate claims arising from . . . a contract entered into by a Commonwealth agency in accordance with this part and filed with the [B]oard in accordance with [S]ection 1712.1 (relating to contract controversies).'" *Id.* at 852 (quoting 62 Pa.C.S. § 1724(a)(1)). We emphasized that "**Section 1724(a)(1) [of the Procurement Code] is substantively identical to the now repealed Section 4 of the Board of Claims Act**[.]" *Id.* at 854 (quoting *Dep't of Health v. Data-Quest, Inc.*, 972 A.2d 74, 79 (Pa. Cmwlth. 2009)) (emphasis added in *Hanover Ins.*). Therefore, we confidently turned to pre-Procurement Code precedent in observing that "**the Board[ of Claims'] jurisdictional provisions must be construed broadly**[.]" *Hanover Ins.*, 35 A.3d at 855 (quoting *Data-Quest*, 972 A.2d at 80) (emphasis added in *Hanover Ins.*). We concluded that "the provisions of the Procurement Code have not **altered** or **limited** the exclusive jurisdiction of the Board of Claims over this [declaratory judgment] matter." *Id.* at 856 (emphasis added). It necessarily flowed from our conclusion that the Board of Claims had exclusive jurisdiction over the matter that we did not, so we transferred that dispute to the Board of Claims. *Id.* at 856 n.8.

Notably, notwithstanding the repeal of the Board of Claims Act and the amendment of the Procurement Code, "it appears that there is little reason to think there has been a fundamental change in the jurisdiction of the Board of Claims or of the Commonwealth Court." 20 G. RONALD DARLINGTON ET AL., WEST'S PENNSYLVANIA PRACTICE, PENNSYLVANIA APPELLATE PRACTICE § 40:316 (2022-23 ed.) (PA. APPELLATE PRAC.). What is more, our Supreme Court has declared that

11

*Hanover Insurance*, which concluded the Procurement Code did not substantially alter the Board of Claims' exclusive jurisdiction, "remains the prevailing law of Pennsylvania unless and until the position is reviewed by [the Supreme Court]." *Scientific Games Int'l., Inc. v. Dep't of Revenue,* 66 A.3d 740, 753 n.16 (Pa. 2013). *See also* PA. APPELLATE PRAC. § 40:316 ("[A]lthough the Supreme Court has yet to address this issue directly, its reference to [*Hanover Insurance*] is a strong indicator that the Procurement Code has not narrowed the Board [of Claims'] jurisdiction and that earlier case law on the jurisdictional issue remains instructive."). Thus, *Hanover Insurance* not only controls as a matter of our own Court's precedent, but it also bears the imprimatur of our Supreme Court.

Empire urges this Court to adopt Judge Pellegrini's dissenting view from *Hanover Insurance* and conclude that the repeal of the Board of Claims Act and amendment of the Procurement Code has indeed changed our jurisdiction. Judge Pellegrini observed that "when provisions regarding the Board of Claims were put into Chapter 17 of the Procurement Code, the old Board of Claims Act was not merely relocated, **but the jurisdiction of the Board of Claims was changed, limited, and made non-exclusive**." *Hanover Insurance*, 35 A.3d at 857 (emphasis added). In the dissent's view, the new scheme meant that "the Board of Claims' jurisdiction **only** involves claims involving contracts for goods or services procured or sought to be procured under the Procurement Code." *Id.* at 858-59 (emphasis added). Further, the dissent did not endorse the majority's approach, which favored "200 years of precedent" over "changes made by the General Assembly by enacting a new statute or amending an old one" which "always trump[s] precedent interpreting previous statutes involving the same subject matter[.]" *Id.* at 859. Certainly, the *Hanover Insurance* dissent makes a persuasive argument that the text

12

of the Procurement Code defining the Board of Claims' new jurisdiction does not encompass insurance disputes with the Fund. But that argument did not win the day, and the majority's approach has the approval, at least for now, of our Supreme Court. Therefore, we are constrained to follow the approach of the *Hanover Insurance* majority and must continue to "recognize the Fund as a Commonwealth agency . . . whose contractual disputes are within the jurisdiction of the Board of Claims." *State Workmen's Ins. Fund, Dep't of Lab. & Indus. v. Caparo Real Est. Inc.*, 635 A.2d 705, 708 (Pa. Cmwlth. 1993).

Here, just like in *Hanover Insurance*, a petitioner has brought a declaratory judgment action asking this Court to make various declarations surrounding its Policy with the Fund.[12] Despite that similarity and the *Hanover Insurance* Court's conclusion that the Board of Claims had jurisdiction over such actions, Empire urges us to distinguish *Hanover Insurance* because, it argues, this action does not arise out of Empire's contract with the Fund. We disagree. At bottom, Empire disagrees with the Fund's calculation of the premium Empire owes as a result of an audit conducted pursuant to the Policy. That premium, per the information page accompanying the Policy, "will be determined by our Manuals of Rules, Classifications, Rates[,] and Rating Plans. All information required below is subject to verification and change by audit." (Amended Petition, Ex. C.)[13] Put simply, Empire was presumably aware

---

[12] Indeed, this case presents one challenge fewer than the *Hanover Insurance* matter because there, the insurance company seeking the declaratory judgment was not a party to the contract between the employer and the Fund. *Hanover Ins.*, 35 A.3d at 852. Indeed, the petitioner there argued that the language of the Procurement Code seemed to limit the jurisdiction of the Board of Claims to claims brought by the contractors themselves, not an interested third party. *Id.*

[13] On November 1, 2019, the Fund sent Empire a letter specifically indicating that the Fund's legal department would make a determination "whether [subcontractors] will remain as individuals or if they must be included as employees on your [P]olicy." (Amended Petition, Ex. D.)

that under the Policy—i.e., its contract with the Fund—there would be a question about whether the Entities were employees or independent contractors, and that the amount it owed under the Policy would turn in part on that determination. Indeed, absent the contractual relationship between Empire and the Fund by virtue of the Policy, there would be no disagreement about the status of the Entities in the first instance. Therefore, we cannot say that Empire seeks relief "separate and apart from any contract with the Commonwealth." (Empire's Br. at 9.)[14] Accordingly, we conclude this action, which seeks to challenge that determination, arises under the contract.[15] Therefore, the Board of Claims has exclusive jurisdiction over this matter, which means that by virtue of Section 761, we are without subject matter jurisdiction.[16] Because we lack subject matter jurisdiction to consider the merits of this case in the first instance, we must not reach the issue whether the Board of Claims may exercise its jurisdiction due to, *inter alia*, the alleged failure on the part

---

[14] What is more, we are confident the Board of Claims possesses the competency to handle, in the first instance, any procedural or evidentiary matters this case presents, should the Board of Claims ultimately be able to exercise its jurisdiction over the matter. For example, the Board of Claims follows the Rules of Civil Procedure and is competent to resolve discovery disputes. *Jetson Direct Mail Servs., Inc. v. Dep't of Lab. & Indus.*, *State Workmen's Ins. Fund*, 782 A.2d 631, 633 (Pa. Cmwlth. 2001) (applying similar predecessor statute requiring observance of Rules of Civil Procedure). *See also* 62 Pa.C.S. § 1722(6) (Board of Claims' procedures must be "consistent . . . with the Pennsylvania Rules of Civil Procedure and the Pennsylvania Rules of Evidence."). It has subpoena power and may consider a wide range of evidence at hearings; it also must issue thorough written decisions. 62 Pa.C.S. § 1725(d)(2)-(e)(1).

[15] We must also reject Empire's reliance on *Fletcher*. Indeed, the *Hanover Insurance* majority—which, as discussed above, is controlling here—specifically addressed *Fletcher* and found it inapplicable, over a dissent. *Hanover Ins.*, 35 A.3d at 856 n.7. There, we said "neither the decision in *Fletcher* nor the relocation of statutory provisions governing the Board of Claims' jurisdiction in this case compels a departure from 200 years of precedent." *Id.* The Supreme Court then explicitly declared the majority's approach in that case "the prevailing law of Pennsylvania . . . ." *Scientific Games*, 66 A.3d at 753 n.16.

[16] In addition, Section 7541(c)(2) of the Declaratory Judgments Act, 42 Pa.C.S. § 7541(c)(2), provides that declaratory relief is not available for any "[p]roceeding within the exclusive jurisdiction of a tribunal other than a court."

14

of Empire to notify the Fund's contracting officer within the timeframe required under the Procurement Code.  It will be incumbent on the Board of Claims, upon transfer, to consider those arguments and decide that question.[17]  *See, e.g.*, *Buchart Horn*, 1 A.3d at 962 (the Board of Claims considering in the first instance whether a contractor's failure to timely notify a contracting officer of a dispute amounted to a failure to exhaust administrative remedies before the contracting agency, such that the Board of Claims could not exercise jurisdiction over the dispute).[18]

## V.  CONCLUSION

Because this action falls within the **exclusive** jurisdiction of the Board of Claims, it necessarily follows that we do not have jurisdiction, per Section 761(a)(1)(iv) of the Judicial Code.

---

[17] As discussed above, the final determination of the Board of Claims on that question, upon appeal, would be subject to this Court's review.  42 Pa.C.S. § 763(a)(1).  Under Section 723(a) of the Judicial Code, 42 Pa.C.S. § 723(a), original jurisdiction actions in this Court are appealable as of right to the Supreme Court, a feature of the interplay of the courts of which our Supreme Court has traditionally been cognizant.  *See, e.g.*, *Pa. Hum. Rels. Comm'n v. Sch. Dist. of Phila.*, 732 A.2d 578, 580 (Pa. 1999) (noting the importance of keeping clear the distinction between original jurisdiction matters in our Court, which are appealable as of right, and matters within our appellate jurisdiction, which the Supreme Court has discretion to take).

[18] We are careful to point out that just because this matter falls within the class of cases over which the Board of Claims has exclusive jurisdiction, it does not mean Empire has necessarily satisfied the "jurisdictional prerequisites" such that the Board of Claims will be able to exercise jurisdiction and ultimately decide this matter.  *Scientific Games*, 66 A.3d at 760.

Accordingly, looking to the plain language of the Judicial Code and our Supreme Court's as-of-now definitive adoption of *Hanover Insurance*'s logic in *Scientific Games*, we must transfer this action to the Board of Claims.[19]

 

 

**RENÉE COHN JUBELIRER,** President Judge

---

[19] *See Hanover Ins.*, 35 A.3d at 856-57 n.8 (finding transfer pursuant to Pa.R.Civ.P. 213(f) was warranted, as "[t]he Board of Claims is considered a judicial tribunal") (quoting *Emps. Ins. of Wausau v. Dep't of Transp.*, 865 A.2d 825, 830 (Pa. 2005)). *See also Caparo Real Est.*, 635 A.2d at 709 (directing court of common pleas, on remand, to transfer the action to the Board of Claims).

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Empire Roofing & More, LLC,    :
                Petitioner    :
                         :
          v.             :    No. 353 M.D. 2022
                         :
Department of Labor & Industry,    :
State Workers' Insurance Fund;     :
State Workers' Insurance Board; and  :
Nancy Walker, Secretary of the     :
Pennsylvania Department of Labor &  :
Industry (in her official capacity),    :
              Respondents   :

# O R D E R

**NOW**, March 7, 2024, the first preliminary objection of the Department of Labor & Industry, State Workers' Insurance Fund, State Workers' Insurance Board, and Nancy Walker, Secretary of the Pennsylvania Department of Labor & Industry (in her official capacity) is **SUSTAINED**, and the Amended Petition for Review of Empire Roofing & More, LLC is **TRANSFERRED** to the Board of Claims. The remaining preliminary objections are **DISMISSED** as moot.

 

_____
**RENÉE COHN JUBELIRER,** President Judge